# CHARLESTON.

## JULIA C. HACQUARD v. HERMAN SWEETWINE.

Submitted January 16, 1923.    Decided January 23, 1923.

1. LANDLORD AND TENANT—*Lessees Held to Have Right to Renew.*

   A written lease of a house used and intended to be used principally for retail mercantile purposes, which states that "first party (the lessor) is to remodel the front of said house in accordance with present plans, and party of the second part (lessee) to pay for any and all repairs made by him and to have first privilege of renting said premises for five years longer at one hundred and twenty-five dollars per month, and to repair water pipes in case of freezing, at any time party of first part desires to sell party of second part shall have refusal," properly construed, means that the lessee has the right, if he elects, at the end of the term, to rent the house for a period of five years at the price and upon the terms stipulated, irrespective of the wishes of the lessor to cease to rent the premises and to terminate the lease at the end of the term. (p. 682).

2. SAME—*Renewal Clause of Lease, Like Other Provisions, Construed in Favor of Tenant.*

> Generally, the renewal clause of a lease, like its other provisions, should be construed in favor of the tenant rather than in favor of the landlord.  (p. 688).

(McGINNIS, JUDGE, absent).

Error to Circuit Court, Ohio County.

Action by Julia C. Hacquard against Herman Sweetwine. From a verdict for plaintiff, defendant brings error.

*Reversed and remanded.*

*J. Bernard Handlan* and *Chas. B. Aherns,* for plaintiff in error.

*James W. Ewing* and *P. J. McGinley,* for defendant in error.

LIVELY, JUDGE:

This controversy involves the construction of the renewal clause of the lease of a building on Market Street in the city of Wheeling.   The action is unlawful detainer, the verdict was for plaintiff upon a peremptory instruction to find such verdict, and judgment was rendered accordingly.

The lease is between Julia Hacquard, the lessor, and Herman Sweetwine, the lessee, and is dated the 14th of September, 1916, and leases a three-story brick building known as No. 1030 Market Street in said city, and is for the term of five years at $100.00 per month, payable in advance, with the usual provisions against sub-letting without the written consent of the lessor, and right of re-entry and possession by her upon failure of the lessee to comply with any of his stipulations; and with the usual covenants on the part of the lessee to pay the rental promptly and to keep the premises in good repair, natural wear and tear excepted, and to deliver the premises in such good repair and order at the expiration of the term.

The provision of the lease over which the litigation arises is as follows:  "And it is further agreed that party of the first part is to remodel the front of said house in accordance with present plans, and party of the second part to pay for

any and all repairs made by him and to have first privilege of renting said premises for five years longer at One Hundred and Twenty-five Dollars per month, and to repair water pipes in case of freezing, at any time party of first part desires to sell, party of the second part shall have the refusal."

A short time prior to the expiration of the five-year term of the lease, the lessor gave notice to the lessee that she would desire possession of the building at the end of the term, and notified him to vacate; the lessee gave notice to the lessor about the same time that he desired to continue in the building for the additional five-year term according to the provision contained in his lease, and upon the terms and conditions therein contained. After some negotiations for a friendly settlement of the matter, without avail, each party stood upon their rights under the terms of the lease as construed by them. It was contended by the lessor that she did not desire further to lease the building, but desired to take charge of it herself and use the upper stories for rooming purposes, to prospective tenants, and to conduct some business of her own in the store room on the first floor. It appears that the rental value at the time of the trial had advanced to $200 or $225 per month, quite a difference between that stipulated in the renewal clause. The lessee declined to vacate the premises, and tendered payment of the $125 per month, as required in the renewal clause, which was refused. The action of unlawful detainer followed, with the result above stated. The lessor contended that the renewal clause above set out should not be effective if perchance she should desire to take the property over and use it herself. The court so construed the clause, and gave a peremptory instruction to find for the plaintiff. The effect of this construction was to write into the renewal clause the words in italics: "second party to pay for any and all repairs made by him, *and unless party of the first part desires to use the building at the end of the term,* second party to have first privilege of renting said premises for five years longer," etc. The clause was so construed to make it optional upon the part of the lessor as to whether the lessee should have any right to continue in the property.

It is conceded that if the lessor desired to continue the

rental of the building, then she was bound under her contract to continue renting it to the lessee, if he so desired, for the term and at the price per month stipulated. It will be seen at once that this construction lessens to a very material extent the right of the lessee to an extension of the lease. Under such construction it would be very easy for the landlord to announce her intention of using the property herself and then afterwards rent to others, thus obtaining the benefit of any advance in the rental over the stipulated price in the lease. It is not meant to suggest that such was the intention of the lessor in this case, for she averred in her testimony that it was her *bona fide* intention to use the property herself, using the upstairs for the accommodation of roomers, and operating some business of her own in the store room on the first floor, and there is nothing in the record tending to show that she intended otherwise. Notwithstanding the peremptory instruction the jury returned a verdict in favor of the defendant, which the court refused to receive, and sent them back to their room to further consider their verdict under the instruction, and to assess damages for the detention. In obedience to the instruction of the court, the jury, a short time thereafter, returned with a verdict for plaintiff as directed. It appears that for about one year prior to the beginning of this lease the property had been vacant, and was considerably out of repair, hence the clause in the lease that the "party of the first part is to remodel the front of said house in accordance with present plans, party of the second part to pay for any and all repairs made by him." Defendant proffered to detail the negotiations leading up to the execution of the lease and to show that he had spent in repairs and in remodeling the building to suit his business from $1500 to $1800, but the court refused to allow that evidence to go in, on the theory that it would vary the plain terms of the written instrument. The theory of the defendant was that such evidence did not tend to vary the terms of the contract, as expressed in the writing, but by giving the facts and circumstances surrounding the parties at the time, to aid in the construction thereof. Possibly some of the proffered evidence relating to the negotiations which were consummated in the lease, notably, that it was agreed that

he should have a five-year term with the privilege of five years additional if he so desired, and that the agreement afterwards prepared by the lessor and presented to him did not contain what had been previously agreed upon, would have been improper.   But under our view of the case it is unnecessary to pass upon the ruling of the court in that regard.   The theory of the defendant, in the attempt to introduce this evidence, was that the terms of the renewal clause, which is the bone of contention, is ambiguous and uncertain, and hence all that transpired between the parties and the facts surrounding the execution of the lease were admissible for the purpose of aiding in obviating the ambiguity and uncertainty.   But is there such ambiguity in the language used as to render the intention of the parties uncertain?   The house was to be used for mercantile purposes, where the defendant intended to place a stock of goods and build up a retail business, and it was evidently contemplated by the parties that he might desire to continue the business, well established, at the end of the term, and hence the clause for renewal.   It will be observed that the terms of the renewal, both as to the length of the term and the rental to be paid, are certain.   If he desired to renew, it should be for five years, and for an increased rental per month.   It was not left open to uncertain negotiations which might be had for the purpose of forming a new contract contingent upon advanced or decreased rental value of the premises.   This clause was evidently put in for the benefit of the lessee, and he was contracting with that view, and it gave to him an important and substantial right.   Indicating this intention of the parties is the provision for the purchase of the property, namely, if the party of the  first part desired  to sell then the  lessee should have the refusal.   If his business was established and successful it was evidently his desire that he should have the right to purchase, if the lessor at any time desired to sell.   It will also be noted that he does not have the right to purchase unless she desires to sell; whereas, in the clause for renewal nothing is said about her desire to rent, nothing to indicate that if she desires to rent at the end of the five-year term he shall in that event have the first privilege of renting for five years longer.   The proposition of disposing of the property

is carefully conserved to her, and the lessee's right in that regard' depended wholly upon the desire of the owner; but her right to refuse to rent is not so carefully conserved to her. It is rather well established that generally the renewal clause of a lease should be construed in favor of the tenant, rather than in favor of the landlord. 16 R. C. L. 884; 24 Cyc. 991; *Kaufmann* v. *Liggett,* 209 Pa. 87. We are cited by counsel for appellant to the cases of *Stetler* v. *North Branch Transit Co.,* 258 Pa. St. Rep. 299, and *McDonald* v. *Karples,* 61 Pa. St. Sup. Ct. Rep. 496, which hold that under substantially the same renewal clause as we have before us, the lessee has an absolute right of renewal irrespective of the desire of the lessor to lease the premises at the end of the first term. In the *Stetler* case the lease provided ''that if at the expiration of this lease the party of the second part, its successors and assigns, shall desire to re-lease the said premises, for a further period of ten years, it or they shall have the first privilege of re-leasing the same at the rental and upon the terms herein contained.'' At the end of the term the owner concluded that he would not lease the property to any one, contending that the right of the lessee to continue further was contingent upon his, the lessor's, option to rent; he instituted ejectment to recover the property, and the court construed the renewal clause to give to the lessee the right to a renewal irrespective of the desire of the lessor to take over the property and cease renting it. The Pennsylvania court said: ''An inspection of the clause shows that if the word 'first' had not been used in connection with the word 'privilege' the right of the lessee to a renewal could not be questioned. Did the privilege of renewal then become any less a privilege by terming it a 'first privilege'? The expression is awkward and perplexing, but we think it is more consistent with the expressed purpose of the lease to hold that the renewal was dependent upon the desire of the lessee, and that the expression of that desire was to give to it the first privilege of re-leasing, that is, priority of the privilege over any one else. The thought was not well expressed, but we feel that the words 'first privilege' in this connection should not be so construed as to nullify a valuable right of the lessee, which, under the paragraph as a whole, was

evidently intended to be created. It was of no possible use to make provision merely that one party should enjoy a certain right if the other party should consent thereto.'' Counsel for the lessor (appellee) asserts the proposition that the clause ''to have first privilege of renting said premises for five years longer at $125.00 per month'' does not import an absolute right to an additional term, but created, as the words signify, a preference in the present lessee if the lessor should again rent the premises; and cites, to sustain this proposition, *Drinkard* v. *Heptinstall*, 55 W. Va. 320; *Crawford* v. *Morris*, 5 Grat. 90; *Hill* v. *Prior*, (N. H.) 106 Atl. 641; *Walsh* v. *Ft. Schuyler Brewing Co.*, 146 N. Y. Sup. 160; *Holloway* v. *Schmidt*, 67 N. Y. Sup. 169; and *Schroeder* v. *Gemeinder*, 10 Nev. 355. In' *Drinkard* v. *Heptinstall* the clause was, ''with the refusal of said premises from month to month thereafter so long as said J. P. Heptinstall may desire to occupy said premises.'' The court said that under this clause there was no obligation on the landlord to continue to rent his property indefinitely or perpetually to any one or to renew the defendant's lease so long as he may desire to occupy the property from month to month, but at the end of any month the landlord might terminate the tenancy by refusing to renew the lease. In the *5th Grattan* case, which is cited in the *Heptinstall* case, the clause was: ''M. is to get the house at the price herein stated, for one year after his present year expires, and is to have the preference each succeeding year thereafter.'' It will be observed in these provisions there is nothing definite in the time and terms of renewal. The length of time, renewal and compensation therefor were open to new negotiations and contract. They are easily distinguishable from the case now under consideration.

In *Walsh* v. *Ft. Schuyler Brewing Co.* the clause was, ''with the first privilege of a renewal of this lease at the end of said term,'' with nothing further in the lease upon the subject of renewal than the language quoted. It did not state for what term, at what rate or manner the renewal was to be effected. The court held that there was something more necessary than a notice by the tenant that he would renew, and desired to continue in the property; and that under the circumstances, some new agreement, acquiesced in

by both parties, was contemplated. The word "renewal" as used was meant to refer to a new or additional lease. The court evidently took the view that the renewal clause did not automatically renew the lease upon notice, but put the parties upon the necessity of a new agreement, and declined to decide, in that proceeding, if there had been a breach of the contract between the landlord and tenant.

*Halloway* v. *Schmidt* decided that the words "first privilege of renewal," as used in the lease, meant the prior right to a lease of five years upon terms the same as those on which the property had been leased, provided the landlord should give a lease; but this construction was based on extrinsic evidence to the effect that it was understood between the parties at the time the lease was made that the landlord never gave a lease of his property for a term of ten years.

In *Schroeder* v. *Gemeinder*, 10 Nev. 355, the lease contained a provision for the purchase of the property, as follows: "the first privilege of buying said premises, at any time they may wish to do so, at the price of one thousand dollars, gold coin." The lease contained a renewal clause, "with the privilege of two years more," and lessees continued into the second term by paying rent which was accepted by the lessor. Some time after the second term began the lessees desired to purchase, and tendered the $1,000 purchase price, and demanded a deed. The lessor refused to accept the money and would not convey. Suit for specific performance was instituted, and relief denied by the lower court. The appellate court reversed the lower court. In construing the clause for option to purchase, the appellate court said if the lessor desired to sell at any time during the term of the lease, it was his duty to first give the lessees privilege of buying, and if they refused to buy, then he could sell the property to another; on the other hand, until such notice was given it would be at the option of the lessees at any time during the existence of the lease to purchase at the price stipulated, and the lessor was bound to execute the deed upon a tender of the stipulated price. In other words, the lessor was bound to deed the property at the price agreed, even if he did not want to sell.

This case sustains the contention of the lessee in the instant

case, in the proposition that he has the right to the second term of 5 years irrespective of the lessor's wish to rent. As, above suggested, appellee has carefully limited the right of appellant to purchase, in express terms, making the sale and purchase contingent upon her desire to sell; but she has not so limited his right to lease the property for the second period.

Construing the lease as a whole, considering all its parts, together with the meager circumstances surrounding the parties at the time of its execution, as developed on the trial, we have concluded that appellant had an option to lease the property for the second term at the price stipulated, which could not be defeated by appellee's desire not to rent the property to any person.

It was error to give the peremptory instruction to find for plaintiff; the judgment will be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*