[Civil No. 4231. Filed October 6, 1941.]

[117 Pac. (2d) 490.]

C. F. HAMMOND, Appellant, v. A. J. BAYLESS
MARKETS, INC., a Corporation, Appellee.

Messrs. Snell & Strouss and Mr. Mark Wilmer, for Appellant.

Messrs. Moore & Romley, for Appellee.

LOCKWOOD, C. J.—A. J. Bayless Markets, Inc., a corporation, called the company, brought suit against C. F. Hammond to recover attorney's fees incurred by it in defending a certain action in a previous suit in which the position of the parties as plaintiff and defendant was reversed. Reference to this previous suit will be made from time to time as is necessary.

The facts leading up to the present action are not in dispute, and may be stated as follows: In 1937 both

the company and Hammond were engaged in the grocery business in Phoenix. In the spring of that year the legislature had enacted chapter 44 of the Session Laws of 1937, commonly known as the Unfair Sales Act, and to which we shall hereinafter refer to as the act. Considerable uncertainty existed among the merchants in Phoenix as to the interpretation of this act and what might be and what might not be termed unfair thereunder, and also as to whether the act was in whole or in part unconstitutional. The company had been for a number of years engaged in certain practices which many of the other grocers thought affected their business seriously and which they considered to be unfair competition under the terms of the new act. It was obviously in the interests of all merchants that the true meaning and constitutionality of the act be determined. Finally Hammond brought a suit which he alleged to be on behalf of himself and others similarly situated, in which he asked that the company be enjoined from doing certain things which he contended were prohibited by the act, and that a declaratory judgment be rendered declaring the act to be constitutional. On his complaint a temporary restraining order was issued without notice, restraining the company from doing various things set forth in the order pending a hearing on an order to show cause why the injunction should not issue, and, as required by law, Hammond gave a bond with the usual conditions to support the restraining order. The company employed counsel who successfully moved to have the temporary restraining order modified in a certain manner.

The question later came on for hearing, as provided by statute, and the court granted an interlocutory injunction in terms substantially like the modified restraining order, and Hammond gave another bond as required by statute to sustain it. The company's

counsel then prepared to meet the issues raised by the whole proceeding and the matter was presented to the court on its merits and it held the act to be constitutional, but found that defendant had not violated it and dissolved the interlocutory injunction. Thereafter the company brought suit upon the two bonds above referred to to recover the attorney's fees which it claimed it had been forced to expend in defense of the proceedings. It asked for $600 for its expenses anent the temporary restraining order, and for $900 for its expenses in defeating the interlocutory injunction.

The case was presented to the court sitting with a jury, and at a certain stage in the proceedings both parties moved for an instructed verdict. The court, following the rule in *Fagerberg* v. *Phoenix Flour Mills Co.*, 50 Ariz. 227, 71 Pac. (2d) 1022, and *Garrett* v. *Reid-Cashion L. & C. Co.*, 34 Ariz. 482, 272 Pac. 918, took this as a request that the issues be withdrawn from further consideration by the jury, discharged the latter, and rendered judgment for the company for $100 on the first cause of action and for $900, subsequently modified to $636, on the second cause of action. The case is before us on the appeal and a cross-appeal, Hammond claiming that the company is not entitled to recover anything, and the company insisting it should have been allowed the full amount prayed for.

There are many assignments of error grouped under a number of propositions of law, which we shall consider in the manner which seems most logical. The first is whether the suit brought by Hammond was one whose main purpose was a declaratory judgment as to the meaning and constitutionality of the act, with the injunction proceedings ancillary only, or whether it should be considered as an injunction pro-

ceeding primarily, with the request for a declaratory judgment merely ancillary thereto.

Our declaratory judgment statute, sections 4385, 4386, 4387, Revised Code 1928, sections 27–701, 27–702, 27–703, Arizona Code 1939, read respectively, so far as material to the present case, as follows:

"*Declaratory judgments authorized—Form and effect.*—Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed, and the action shall not be open to the objection that a declaratory judgment only is prayed for. The judgment may be either affirmative or negative, and has the force and effect of a final judgment, subject to appeal as in other actions."

"*Person interested or affected may have declaration.*—Any person interested under a deed, will, written contract or other writing, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof."

"*Person beneficially interested may have declaration—Enumeration not a limitation.*— . . .

"The enumeration in this and the preceding sections does not limit or restrict the exercise of the general powers conferred, in any action where declaratory relief is sought, in which a judgment will terminate the controversy or remove an uncertainty."

█ Upon a careful examination and comparison of the pleadings, the following situation appears therein: Hammond claimed that the company was engaged in certain illegal practices which seriously injured his business. The company admitted the practices but insisted they were perfectly legal. This issue depended upon the meaning and validity of the act. There was thus a real controversy between the

parties in regard to a right claimed by one and denied by the other, which involved the construction and validity of the statute, and would be determined by a declaratory judgment on this point. And this issue could have been determined just as effectively if no injunction had been asked until after the declaratory judgment was rendered. Further, any permanent relief would depend upon what that judgment was. We think, therefore, the primary purpose of the action was to obtain a declaratory judgment construing the act, and that the injunctive relief sought was merely ancillary to such judgment in the same manner as the foreclosure of an attachment or an execution is to an ordinary judgment. Such being the case, it is apparently not seriously in dispute that a recovery on the bonds can be had only for legal services performed in regard to the temporary restraining order and the interlocutory injunction, and not for those applying only to the main issue of the case, which was, what is the meaning of the act and is it valid with such a meaning? *Jacobson* v. *Laurel Canyon Min. Co.*, 27 Ariz. 546, 234 Pac. 823.

██ The next question is whether the company procured Hammond to institute the proceeding and to secure the restraining order and injunction, for if it did, in law and equity it cannot recover any damages on the bonds. We think, however, this only applies when a party has either directly or indirectly instigated the particular proceeding for which the bond was given. The mere fact that he may have desired to have the main issue raised by the suit settled in court does not necessarily amount to a legal instigation of the ancillary proceeding. We have examined the offer of proof appearing in the record, and we think it falls far short of showing that the company instigated the bringing of the injunction proceeding by Hammond. The mere statement by it that it would

like to have the constitutionality and meaning of the law determined in a proper proceeding by no means necessarily means that it desired to have an action brought in which it would be enjoined from continuing its business in the usual course prior to a decision on the merits of the action.

■ We next come to the question as to whether the court erred in withdrawing the case from the jury. Under the law as it stood prior to the adoption of the new rules of procedure, a motion by both parties for a directed verdict amounted to an agreement that there was no issue of fact left for the determination of the jury and that the court might, and should, properly discharge the jury and itself render judgment upon the record as made. *Fagerberg* v. *Phoenix Flour Mills Co., supra.*

■ We consider then whether there is sufficient evidence in the record to sustain the judgment of the trial court, for if there is it should be affirmed. It appears from the record that counsel for the company in presenting to it their bill for services did not itemize it but fixed the lump sum of $1,500, without designating how much applied to the different proceedings involved in the action. If this were all the evidence on the subject, under the decision in *Jacobson* v. *Laurel Canyon Min. Co., supra,* we would be compelled to hold that the court could not render a judgment for attorney's fees in favor of the company in this action. It is well known, however, that counsel in rendering statements to clients do not always break down those statements, showing the value of each particular service rendered, and under such circumstances when the question arises as to how a statement rendered should be apportioned, it is always permissible for counsel to show the different items of which the statement was a summary. One of counsel for the company testified very fully in regard to the

amount of work which they did on all phases of the action and the reasonable value of the services rendered. He stated that, in his opinion, $600 was a reasonable fee for all matters up to and including the hearing on the interlocutory injunction, of which $100 was a reasonable fee for the work done incident to the securing of the modification of the temporary restraining order. He also stated that the $900 was a reasonable charge for that portion of the work pertaining to the interlocutory injunction phase of the matter. There was no evidence of any nature contradicting this testimony. In actions for an attorney's fees, while expert testimony as to the value of such service is admissible, and should be given due weight, it is not conclusive on the court, for the latter is itself an expert on that question and may consider its own knowledge and experience in determining a reasonable and proper fee, and in the light of such knowledge may form an independent judgment and determine the reasonable compensation to be allowed. *Elconin* v. *Yalen,* 208 Cal. 546, 282 Pac. 791; *Enyart* v. *Orr,* 78 Colo. 6, 238 Pac. 29; *Kirk* v. *Culley,* 202 Cal. 501, 261 Pac. 994; *In re Associated Towel & Linen Sup. Co.,* D. C., 7 Fed. Supp. 699; *Davitt* v. *O'Connor,* 2 Cir., 73 Fed. (2d) 43; *O'Connor* v. *Davitt,* 293 U. S. 621, 55 Sup. Ct. 217, 79 L. Ed. 709. Nor need the court award the fees asked for the attorney merely because he is the only one who testified on the subject. *Bowman* v. *Maryland Cas. Co.,* 88 Cal. App. 481, 263 Pac. 826. The trial court originally gave judgment for $100 for services performed in connection with the temporary restraining order, and $900 for services performed in connection with the interlocutory injunction, but later modified this judgment by reducing the last item to $600, but allowing $36 additional for the cost of a transcript which counsel for the company claimed to

have been necessary in the preparation of its case on the interlocutory injunction.

It is urged on the cross-appeal by the company that the court had no power to modify the judgment in this manner. While admitting that under the provisions of section 3859, Revised Code 1928, section 21-1502, note, Arizona Code 1939, the court may modify a judgment within six months from the date of entry, it is urged that it can only be done for good cause, and that no good cause appears in the record. We think that particularly on a judgment of this kind, when the proper amount to be allowed is wholly within the discretion of the court and dependent to a great extent on its own knowledge, the mere fact that the court does modify the judgment is sufficient to establish that it had good cause to believe the modification to be correct.

While we have considered all of the assignments of error, we think the only ones which require a discussion have been disposed of by this opinion.

Upon the whole case we think the record shows no reversible error, and the judgment of the trial court is affirmed.

McALISTER and ROSS, JJ., concur.