173 P.2d 758

PODOL et al. v. JACOBS.

No. 4837.

Supreme Court of Arizona.

Oct. 28, 1946.

52

Conner & Jones, of Tucson, for appellants.

Knapp, Boyle & Thompson, of Tucson, for appellee.

MORGAN, Judge.

Appellants were defendants and appellee was plaintiff in the lower court. The facts, proceedings and issues may be stated briefly as follows:

Pauline Podol leased as her separate property to the plaintiff certain store premises for a term expiring January 4, 1945. The following provision appeared in the lease: "Lessee also has an option for three additional years for the rent of $125.00 per month for the first year and $135.00 for the additional two years, but must give lessor 90 days written notice before the lease expires of his intention to continue on this option of three years, and to pay the first and last months rent."

On January 4, 1945, the date of the expiration of the original lease, plaintiff brought suit for a "declaration of his

rights" under the lease and option for extension and for a performance by the defendants of their obligations. Benjamin Podol, the husband of Pauline, was made a defendant in the action. The suit was obviously brought under or is based on the provisions of Chap. 27, Art. 7, Declaratory Judgments, sec, 27-701 et seq., A.C.A.1939.

The complaint alleged that plaintiff had complied with the option for extension by giving written notice about September 6, 1944, of his intention to renew, followed by tender on December 12, 1944, of his first and last months' rent. He alleged that the tender was refused, and that defendants notified him that he had failed to exercise his option to extend the lease and would require him to vacate on January 4, 1945.

Defendants moved to dismiss on the ground that the only issue involved was possession, the complaint did not state facts justifying a declaratory judgment suit and the allegations of the complaint disclosed that a tender of the first and last months' rent was made too late to be a compliance with the option. This was overruled. Defendants' answer, denying written notice of plaintiff's intention to renew, but admitting tender on December 12, with counterclaim for possession based on Chap. 27, Art. 15, Sec. 27-1501, A.C.A.1939, were filed. Reply was made by plaintiff to the counterclaim.

The case was tried before a jury. Plaintiff submitted proof to the effect that he had mailed the written notice to the defendants at the Valley National Bank Building, where Benjamin Podol maintained an office. Defendants testified that the notice was never received. During the course of the trial, the court sustained plaintiff's objection to questions asked by defendants' counsel of Benjamin Podol at the conclusion of his examination by the plaintiff as an adverse witness. The court also overruled defendants' objection to a question propounded by plaintiff's counsel to the plaintiff relative to an alleged admission by defendant Benjamin Podol to the effect that he had received the written notice of intention to renew. The objection was made upon the ground that his admission, since he was only the agent of the owner Pauline Podol, was not binding on her. The court further overruled defendants' objection to a question asked one of plaintiff's witnesses on rebuttal, the purpose of which was to elicit her intention in fixing a definite date during her testimony given in plaintiff's main case.

Defendants' motions for judgment at the conclusion of plaintiff's case and at the close of the entire case were denied. The issue as to whether defendant Benjamin Podol had received plaintiff's written notice of intention to renew was submitted to the jury, eleven of whom answered that the notice had been received. By agreement of the parties, the question of "agency of Benjamin Podol to receive notice of renewal of lease in behalf of Pauline Podol" was submitted to the court. The evidence as to this will be discussed later.

From judgment entered for plaintiff, and a denial of their motion for a new trial, defendants appeal. Substantially five questions are presented for our consideration, which will be separately stated, discussed and determined.

1. Was it an abuse of discretion for the court to entertain a declaratory judgment suit by the lessee against the lessor for construction of a written option to renew and for specific performance of renewal and which substantially involved the right of possession of the leased premises, filed on termination date of the original lease, if such suit was intended to prevent the lessor from resorting to relief afforded for prompt determination of the issue of possession under the forcible entry and detainer statute, Chap. 27, Art. 12, sec. 27-1201 et seq., A.C.A.1939, and in which summary proceedings, if filed by the landlord, the lessee might have presented as a defense his right of renewal?

There can be no question that plaintiff had a cause of action under the declaratory judgment act. Sec. 27-701, supra, states: "Courts of record may declare rights, status, and other legal relations * * *." In section 27-702, it is provided: "Any person interested under a * * * written contract or other writing, * * * may have determined any question of construction or validity arising under the * * * contract, * * * and obtain a declaration of rights, status or other legal relations thereunder." We have held that an action by a lessee to test the validity of a lease was properly brought under the act. Woodward v. Fox West Coast Theaters, 36 Ariz. 251, 284 P. 350. Such actions are not uncommon. Pulsifer v. Walker, 85 N.H. 434, 159 A. 426, 81 A.L.R. 1052.

The question in a suit under the declaratory judgment act must be real and not merely theoretical. The proponent must have an actual or real interest in the matter for determination, and the opponent must have a real interest in opposing the declaration sought. In other words, there must be an actual controversy. Morton v. Pacific Const. Co., 36 Ariz. 97, 283 P. 281; Kleck v. Wayland, 53 Ariz. 432, 90 P.2d 179; Hammond v. A. J. Bayless Markets, 58 Ariz. 58, 117 P.2d 490. The act is remedial and is to be liberally construed and administered. Taylor v. McSwain, 54 Ariz. 295, 95 P.2d 415; Peterson v. Central Arizona Light & Power Co., 56 Ariz. 231, 107 P.2d 205. The record here discloses that there was an actual existing controversy and disagreement of the parties as to the meaning of the option clause. An examination of the act discloses that it covers a multitude of controversies and is general in its operation. The last paragraph of sec. 27-703 provides: "The enumeration in this and the preceding sections does not limit or restrict the exercise of the general powers conferred, in any action where declaratory relief is sought, in which a judgment will terminate the controversy or remove an uncertainty."

While in sec. 27-704, we find "The court may refuse to render a declaratory judgment, where such judgment would not terminate the uncertainty or controversy."

Although there is a division of authority on the subject, we think that generally speaking the rule is, under statutes similar to our declaratory, act, relief under the act may be afforded either solely for the declaration of rights or duties or as additional to other relief sought. 16 Am.Jur. 333, § 64, Declaratory Judgments; Anno. 68 A.L.R. 112; Merchants' Trust Co. v. Hopkins, 103 Cal.App. 473, 284 P. 1072. It also seems to be the rule that consequential or incidental relief, if properly alleged and sought, may be granted in a declaratory judgment proceeding. 87 A.L.R. 1247, 101 A.L.R. 693

Whatever the rule may be elsewhere the scope of proceedings and relief afforded under a declaratory judgment act must be determined by reference to our own statutes on the subject. Sec. 21-1217 of the Code specifically provides that the procedure for obtaining a declaratory judgment shall be in accordance with the rules of procedure in the superior courts. By this section, the right to trial by jury is secured. "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar." The judgment in this character of action is therefore to be governed by section 21-1219, which by virtue of the provisions of Chap. 8, sec. 3, Laws of 1939, not having been superseded by the adopted rules, is to be deemed a rule of the court. This section reads: "The judgment of the court shall conform to the pleadings, the nature of the case proved, and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity."

Again in section 21-1203, Rule Civ. Proc. 54(c), the provision is made, "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." See Keystone Copper Min. Co. v. Miller, 63 Ariz. 544, 164 P.2d 603, 611, for the character of relief to be granted in actions governed by the Rules of Civ. Procedure.

From what has been said it will be seen that not only was there an actual controversy in this case but that complete relief could be afforded the parties in the action instituted by plaintiff. The existence of another remedy by the terms of the rule was not a bar to the action, and the court had the right to order a speedy hearing. Under these circumstances, we think the court was acting entirely within its discretion in entertaining the suit. Conceding, for the sake of argument that all the issues might have been determined in a

summary action for unlawful detainer, the remedy there afforded was no more efficacious than the one pursued. The fact that the declaratory proceedings were not instituted until the last day of the term of the original lease, and that it may have been intended to prevent the landlord from resorting to the summary proceedings, did not change the picture. What may have been the plaintiff's intention is scarcely material. He is not to be treated as a transgressor when lawfully pursuing an authorized proceeding. A litigant is not to be penalized because he waits until the last day before a claim is barred by limitations before he institutes the action. The law does not compel a litigant to file a declaratory action at any particular time. He is required only to institute the suit when and during the existence of a real controversy. It is evident that the controversy as to the meaning of the renewal clause was in existence at the time this suit was filed. The law does not require one who has a cause of action which he may present as a plaintiff to wait until his adversary files an action, and then present his claim either by way of defense or counterclaim.

Whether, if a summary action had been filed, it would have superseded the action instituted by plaintiff, or whether plaintiff might have pleaded the prior action in abatement or interposed as a defense in the summary action his right of renewal, are matters we cannot consider in this proceeding. We are confined to determining the law upon issues arising out of actual facts. We cannot determine what the law or rule may be upon a suppositious case. Mesa Mail Pub. Co. v. Board of Supervisors, 26 Ariz. 521, 227 P. 572; Bissell v. Spring Valley Tp., 124 U.S. 225, 8 S.Ct. 495, 499, 31 L.Ed. 411, in which the court said: "Courts are not established to determine what the law might be upon possible facts, but to adjudge the rights of parties upon existing facts, * * *." The lessee naturally did not and could not plead the prior action in abatement, nor present as a defense in the summary proceedings the matters set forth in his complaint since no such action was filed by the lessor. Anything we might say with respect to these matters would be beyond the issues in this case and merely obiter dicta. We merely hold that in the case presented the court properly exercised its discretion in entertaining plaintiff's suit under the declaratory judgment statute. Woollard v. Schaffer Stores Co., 272 N.Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262; Id., 273 N.Y. 527, 7 N.E.2d 676, 109 A.L.R. 1262; 87 A.L.R. 1219; Malley v. American Indemnity Corp., 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322; 1 C.J.S., Actions, § 18, subsec. 8, pp. 1027, 1029; Sec. 21-1217, ACA 1939.

2. Under the terms of the renewal clause in the lease. (in addition to the written notice of intention to renew), must the first and last months' rental be paid or

tendered 90 or more days prior to the expiration of the orginal lease to make the option effective?

The option clause must be given a reasonable construction. To make it effective the lessee had to give the written notice not less than 90 days before the lease expired. This clause does not in terms require lessee to pay the two months rental at the time of giving the notice, or 90 days prior to the termination of the lease. It is ambiguous in that respect. However, it seems obvious that it was the intention of the parties that this rental should be paid before the expiration of the old lease. The plaintiff made tender within that period. We think this was a compliance with the terms of the option clause. It may be assumed that the parties contemplated the execution of a new lease or extension to evidence the renewal prior to the expiration of the old lease, and upon the execution of this instrument the lessee would be required to pay the advance rental. Renewal clauses are generally construed in favor of the tenant rather than the landlord. Hacquard v. Sweetwine, 92 W.Va. 681, 115 S.E. 797; Watts v. Bruce, 245 Mass. 531, 139 N.E. 650; 455 Seventh Avenue Inc. v. Frederick Hussey Realty Corp., 295 N.Y. 166, 65 N.E.2d 761; Hall v. Weatherford, 32 Ariz. 370, 259 P. 282, 56 A.L.R. 903. The plaintiff's tender in December, prior to the expiration of the lease, was a compliance with the renewal clause.

3. Where the plaintiff, in his opening case, has called the defendant as an adverse party for examination and has concluded his cross-examination, it is reversible error to deny the defense counsel the right to interrogate the defendant at that time on matters pertinent to the cross-examination, and to the issues of the case, but where the right is reserved to defendants to interrogate on said matters in presenting their defense?

Sec. 21-922, ACA 1939, Rules Civ.Proc. 43(b), provides: "A party may call an adverse party * * *, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party."

This is similar to rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, except that in that rule there is added "only upon the subject matter of his examination in chief." The Federal rule is designed to and does limit cross-examination of a witness who has been interrogated as an adverse party to the subject-matter of his examination in chief. It will be observed that no limitation appears under our rule. Prior to the adoption of these rules, it was the law when an adverse party had been interrogated he could be examined by his own counsel only concerning matters which had been brought

58

out during his examination as an adverse party. Sec. 4416, R.C.1928.

As the law now stands, the cross-examination of an adverse party by his own counsel must be governed by the general rules relating to cross-examination. In Tucker v. Reil, 51 Ariz. 357, 364, 365, 77 P.2d 203, 206, it was said, in construing sec. 4416, supra: "We think that many counsel have misunderstood the true meaning of this statute. Its only effect is to permit the party calling the witness to ask leading questions, and to provide that he is not concluded by the answers of the witness, and in no other respect does it change the usual rules applying to the examination of witnesses. In other words, the witness is conclusively presumed to be a hostile witness and the rules of law governing witnesses of this nature are applied. When, therefore, defendant was called under the statute, any questions which were asked of him by counsel for the plaintiff were subject to the same objections as to their competency, relevancy, or materiality as though plaintiff himself were testifying, and when he was cross-examined by his own counsel after plaintiff's counsel had finished the examination, such examination, was subject to the same rules as though he had been plaintiff's own witness in the first place. * * *"

It is true that this pronouncement was made before the adoption of the new rule, but it clearly shows that the usual rules governing the cross-examination of witnesses generally apply to the examination of an adverse witness except as otherwise provided by the statute.

There are two general rules which control cross-examination. The so-called American rule confines cross-examination to matters brought out on direct examination. As to other matters, the cross-examiner makes the witness his own. 70 C.J. 653, § 818, Witnesses. Under what is known as the English rule, the cross-examination of a witness, regardless of the scope of the direct examination, may cover every issue in the case. 70 C.J. 661, § 821, Witnesses. The great weight of American authority sustains the American rule. 10 Words and Phrases, Perm. Ed., Cross Examination, p. 572. The rule in Arizona partakes somewhat of both the English and American rules. Upon cross-examination the witness may be interrogated "upon all matters pertinent to the case of the party calling him, except exclusively new matter and nothing shall be deemed new matter except it be such as could not be given under a general denial." Rush et al. v. French, 1 Ariz. 99, 140, 25 P. 816, 828. If the cross-examination is within the scope of the direct examination, it is not objectionable, even though it have the effect of developing defensive matter. Security Benefit Ass'n v. Small, 34 Ariz. 458, 463, 272 P. 647. It is not error, however, to deny cross-examination designed for the purpose of establishing new matter made an issue by defendant's pleading. Ellis v.

First Nat'l Bank of Globe, 19 Ariz. 464, 470, 172 P. 281. Furthermore it is provided in the first sentence of section 21-922, supra, "Any witness may be cross-examined on any matter material to the case." This now commits us to the English rule.

From what has been said, it would appear that the court erred in denying defendants' counsel the right to cross-examine defendant both on the matters brought out in the examination in chief and upon matters pertinent to the issues of the case. We fail to see, however, that the action of the court constitutes reversible error. No claim is made that the defendants did not, in making their own case, have the right to examine fully the witness on the matters sought to be elicited. The point made by defendants that they were prejudiced by the failure of the court to allow the cross-examination of defendant Benjamin Podol during plaintiff's case, for the purpose of showing that he was not an agent of his codefendant, is not well taken. Their position is that if this evidence had been allowed there would have been no foundation for the testimony of the witness Kadjan pertaining to Benjamin Podol's admission of receipt of notice of renewal of option. The record discloses that his codefendant Pauline Podol had testified to facts indicating that Benjamin was her agent. This testimony, even if contradicted by her husband's testimony, would have been sufficient to allow the introduction of the testimony of the witness Kadjan.

It has long been the rule in this jurisdiction that the order of proof is largely within the discretion of the trial court. Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042, L.R.A.1918F 713; Independent Meat Co. v. Crane Co., 21 Ariz. 1, 184 P. 992; Seaside Nat'l Bank v. Allen, 35 Ariz. 302, 277 P. 68. In the absence of a definite showing that defendants were harmed by the failure of the court to permit the cross-examination as provided in sec. 21-922, supra, we are of the opinion that the court's ruling was without prejudice to the defendants, and does not constitute reversible error.

4. Where the evidence discloses that an agent has acted for his principal in entering into a lease and has accepted at his office all payments made thereon, and has generally handled all matters pertaining thereto, is the admission of the agent that he received the written notice of renewal of the lease binding upon the principal?

The court found that Benjamin Podol was the agent of his wife for the purpose of receiving plaintiff's notice of renewal. It appears conclusively from the evidence that he handled the lease from its inception, and transacted all business in connection with it. He negotiated the deal in the first instance with the plaintiff, and accepted and collected at his office all payments made thereon. The renewal was

a part of the original lease. The court found that he had actual authority to receive the notice of renewal, and the evidence as a whole indicates that he had the apparent authority to handle the matter of the renewal. Under these circumstances, his admission of receipt would be binding upon his principal. At the time the admission was made, negotiations were going forward for the renewal. According to the evidence, the notice had been sent. The testimony indicates that at the time the admission was made, Benjamin Podol was visiting the leased premises. The inferences to be drawn from the record as a whole would indicate that at that time he, as the agent, was negotiating the deal for the renewal.

In 3 C.J.S., Agency, § 236, subsec. a, p. 146, it is said: "Where an agent in negotiating a transaction or making a contract on behalf of his principal, makes representations, declarations, and admissions in connection therewith respecting the subject matter, they will be binding on the principal as though he were acting personally, * * *." There was no notice of want of his authority given to plaintiff. The plaintiff apparently relied on the admission that the notice of renewal had been received. The admission was made by the agent at the time of and presumably as a part of the transaction for the renewal. 3 C.J.S., Agency, § 236, subsecs. d, e, p. 154. The admission was, therefore, binding upon Pauline Podol.

5. When a witness for plaintiff has been fully examined and cross examined by the parties, in plaintiff's main case, and has fixed a definite date concerning a material incident, which later proof discloses could not have occurred at the time so fixed, is it reversible error, over seasonable objection, for the court to allow her to testify in rebuttal at the close of the whole case that she did not attempt nor intend by her former testimony to fix a definite date?

▊ Whether a witness may be recalled for the purpose of correcting or explaining previous testimony given in a case is a matter that is within the sound discretion of the court. 70 C.J. 601, 603, §§ 773, 774, Witnesses. Illustrative of this are the following cases: People v. Finley, 85 Cal.App. 670, 259 P. 1019; Rugenstein v. Ottenheimer, 70 Or. 600, 140 P. 747; Faust v. United States, 163 U.S. 452, 16 S.Ct. 1112, 41 L.Ed. 224; People v. Ryan, 152 Cal. 364, 92 P. 853. The question propounded and to which objection was made, "You in your testimony on yesterday, Mrs. Kadjan, did you attempt to give the exact date at which you talked to Mr. Jacobs and saw Mr. Podol at 227 East Congress Street?". The objection made by counsel for defendants was to the effect that the jury would determine what was intended by her answer. We think the objection should have been sustained. However, we do not see how the answer of the witness "No" had any evidentiary force or effect.

one way or the other. The matter would appear to be nonprejudicial.

No reversible error appearing, the judgment is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.