196 P.2d 470

TRICO ELECTRIC COOPERATIVE, Inc. v. RALSTON et al.

No. 5040.

Supreme Court of Arizona.

July 12, 1948.

360

John F. Connor, of Phoenix, for appellant.

Tom Fulbright, of Florence, and Whitney, Ironside & Whitney, of Phoenix (Walter Roche, of Phoenix, of counsel), for appellees.

GIBBONS, Superior Judge.

The Eloy Light, Power and Utility Company, a defendant below, herein called "Eloy Company", is an Arizona public service corporation and owns water and electric plants, lines, and systems in the unincorporated town of Eloy, Pinal County, Arizona, and in the vicinity thereof, by which it serves the public generally with electrical energy for general purposes and for pumping of water for irrigation of farm lands and supplying water in the town of Eloy for domestic and commercial use. Plaintiffs (appellees) are customers of the Eloy Company and each receive one or more of the services above named. The appellant, Trico Electric Cooperative, Inc., herein called defendant, is a nonprofit non-

stock membership corporation organized under the provisions of article 4, chapter 53, A.C.A.1939, formed to take advantage of the grant of loans to nonprofit cooperatives for rural electrification, pursuant to the provisions of the Rural Electrification Act of 1936, title 7, U.S.C.A., chapter 31, sections 901–914.

On October 29, 1946, the Eloy Company, for a nominal consideration of $5, granted defendant for a period of sixty days the option to purchase for the sum of $200,000 all its electric transmission and distribution lines and facilities and all water distribution properties. Within said sixty-day period defendant Trico exercised said option and announced its election to purchase said properties.

On December 5, 1946, plaintiffs commenced this class action against defendant and the Eloy Company in the superior court of Pinal county, Arizona, for themselves and on behalf of all the consumers of water and electric energy furnished by Eloy Company, asking for declaratory relief adjudicating said option agreement and contemplated sale and transfer of properties thereunder to be unlawful, illegal and void, and for injunctive relief enjoining defendants from consummating said sale and transfer of possession, control, or ownership of said properties.

Defendant filed a motion to dismiss plaintiffs' amended complaint on the grounds: (a) that the court lacked jurisdiction of the subject matter of the action; and (b) that the said complaint failed to state a claim upon which the relief prayed for could be granted. This motion was denied by the trial court; both defendants thereupon answered separately on the merits, each admitting that a controversy existed between plaintiffs and defendant Trico. Eloy Company further asked that the court grant declaratory relief adjudicating the validity and legality of said option and the proposed sale thereunder.

Thereupon, plaintiffs moved for judgment on the pleadings, which motion was granted by the court, and in said judgment it was decreed that said option and the contemplated sale thereunder were unlawful, illegal and void and of no force and effect. No injunctive relief was granted. Defendant Trico appeals from said judgment, but Eloy Company, though served with copies of notice and designated record on appeal, did not join therein and is not before this court either as an appellant or appellee.

There are six assignments of error and an equal number of propositions of law, some of which are fused and intermingled, and not entirely clear as to their application to the issues involved. In the interest of clarity and brevity, we shall consider only those which are necessary in this appeal.

One of the basic questions is whether the courts or the corporation commission has the jurisdiction and power to determine the validity of said option agreement.

In the instant case the record discloses that plaintiffs brought this suit before the matter of the sale therein contemplated could be presented to the corporation commission for approval or disallowance. Counsel for defendant Trico is contending that the court in entertaining this suit testing the validity of the contract in question is usurping the corporation commission's jurisdiction.

Each department above named was created by and owes its existence to the organic law of this state; and each must rely upon the constitution and implementing statutes thereto to define its powers and duties.

In Corporation Commission v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443, 447, we said: "In construing the provisions of the constitution, it is clearly necessary that we consider the instrument as a whole, and endeavor to give such a construction to each and every part as will make it effective and in harmony with all the other parts. * * *"

See also Arizona Eastern Railroad Co. v. State, 19 Ariz. 409, 171 P. 906.

Applying this rule to the instant case, there are several constitutional provisions which must be considered in determining what department has the jurisdiction to construe the validity of a contract. Article 3 of the constitution provides: "The powers of the government of the state of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the power properly belonging to either of the others."

Section 1 of article 6 provides: "The judicial power of the state shall be vested in a Supreme Court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law."

and sections 3, 4 and 6 of article 15 read as follows:

"Section 3. The corporation commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state, and may prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; * * * Provided further, that classifications, rates, charges, rules, regulations, orders, and forms or

systems prescribed or made by said corporation commission may from time to time be amended or repealed by such commission."

"Section 4. The corporation commission, and the several members thereof, shall have power to inspect and investigate the property, books, papers, business, methods, and affairs * * * of any public service corporation doing business within the state, and for the purpose of the commission, and of the several members thereof, shall have the power of a court of general jurisdiction to enforce the attendance of witnesses and the production of evidence by subpoena, attachment, and punishment, which said power shall extend throughout the state. Said commission shall have power to take testimony under commission or deposition either within or without the state."

"Section 6. The law-making power may enlarge the powers and extend the duties of the corporation commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the commission may make rules and regulations to govern such proceedings."

In State v. Tucson Gas etc. Co., 15 Ariz. 294, 138 P. 781, 785, after quoting article 3 of the constitution, we said: " * * * The functions of the Corporation Commission are not confined to any of the three departments named, but its duties and powers pervade them all; hence the provision 'except as provided in this Constitution, such departments shall be separate and distinct.'" (Emphasis supplied.)

■■ Article 3 and section 1 of article 6 of the constitution confer all judicial power of the state in the courts, "except as provided in this constitution". No judicial power is vested in or can be exercised by the corporation commission unless that power is expressly granted by the constitution. None of the constitutional provisions set forth above confer upon the commission the jurisdiction to pass upon the construction and validity of contracts. It is urged by defendant that such power of the commission is conferred by the provisions of sections 69-217 and 69-236, A.C.A.1939. In the first place these statutes are of a supervisory and regulatory nature, designed to protect the public interest; and in the second place, being statutory, they cannot grant powers beyond the limits prescribed by the constitution.

The power of the legislature to extend the jurisdiction of the corporation commission was discussed in Menderson v. City of Phoenix, 51 Ariz. 280, 76 P.2d 321, 323, wherein section 6, article 15 of the constitution was under consideration. We said: " * * * The reasonable and natural construction of section 6, supra, is not that the legislature may enlarge the jurisdiction granted by the Constitution to the Corporation Commission to include sub-

ject matter obviously intended to be excluded from such jurisdiction, but that it may enlarge or extend the powers and duties of the commission over the subject matter of which it has already been given jurisdiction, and other matters of the same class, not expressly or impliedly exempt by other provisions of the Constitution. Such a construction of section 6, supra, is in harmony with our general scheme of government and with all other provisions of the Constitution."

The California statutes prohibiting the sale by a public utility of its property without authority from the regulatory commission is essentially identical with our section 69-236, A.C.A.1939. In Hanlon v. Eshleman et al., 169 Cal. 200, 146 P. 656, 657, the supreme court of California said: "* * * The owner may not transfer such properties unless authorized by the commission. *All that the commission is concerned with, therefore, is whether a proposed transfer will be injurious to the rights of the public.* If not, the owner may be authorized to make the transfer. With the rights of an intending purchaser the commission has nothing to do. *Nor has it the power to determine whether a valid contract of sale exists, or whether either party has a legal claim against the other under such contract. These are questions for the courts, and not for the railroad commission,* which is merely authorized to prevent an owner of a public utility from disposing of it where such disposition would not safeguard the interests of the public. * * *" (Emphasis supplied.)

In Texas the court, in discussing the power of the railroad commission to pass upon the validity of a lease contract, said: "* * * It could not pass upon the validity of the contracts and should have withheld any ruling on the application for approval of the contracts until their validity had been determined in a proper proceeding by a court of competent jurisdiction. Railroad Commission of Texas v. Rau, Tex.Civ.App., 45 S.W.2d 413; Railroad Commission of Texas v. North Texas Coach Co., Tex.Civ.App., 92 S.W.2d 268." Thompson v. Foster, Tex.Civ.App., 105 S. W.2d 343, 345.

Again in Railroad Commission of Texas v. Rau, Tex.Civ.App., 45 S.W.2d 413, 416, the question of the validity of a contract for the sale of a bus line was involved, and the court said: "Appellee contends that the railroad commission was without power to determine the validity of the contract between Rau and Joe Amberson. This contention we think is correct. The powers granted and duties conferred upon the railroad commission by the act in question are very ample as regards the granting of certificates of convenience and necessity, and the regulation of those engaged in the traffic. *We find nothing in the act, however, which attempts to confer any power upon the commission to adjudicate the contractual rights of individuals.* * * * Numerous authorities might be cited in

support of this view. (Citing cases) * * *" (Emphasis supplied.)

See also People v. Peoria & P. U. Ry. Co., 273 Ill. 440, 113 N.E. 68; Norfolk & Western Ry. Co. v. Commonwealth, 143 Va. 106, 129 S.E. 324; Avery Freight Lines v. White, 245 Ala. 618, 18 So.2d 394, 154 A.L.R. 732; Stratton v. Railroad Commission, 186 Cal. 119, 198 P. 1051.

In Arizona Corporation Commission v. Tucson Gas, Elec. L. & P. Co., 67 Ariz. 12, 189 P.2d 907, we in effect held the commission had no judicial powers, except as expressly given by the constitution; and in Commercial Life Ins. Co. v. Wright, 64 Ariz. 129, 166 P.2d 943, 949, we said: "The Corporation Commission has no implied powers and its powers do not exceed those to be derived from a strict construction of the Constitution and implementing statutes. * * *"

Clearly the construction of a contract is a judicial function and the courts, not the corporation commission, have the jurisdiction to determine the validity of said option agreement, although eventually the contract of sale, if valid, must have the sanction and approval of the latter before it becomes effective.

In support of the next assignment of error, defendant Trico urges as a proposition of law that plaintiffs have an adequate remedy at law and hence cannot resort to injunctive relief. The amended complaint seeks declaratory relief, prays for judgment declaring said option agreement illegal and void, and for injunctive relief. Only the declaratory determination was granted in the judgment. The existence of another remedy is not a bar to other relief under the declaratory judgment act. Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758; Section 21-1217, A.C.A.1939, provides in part: "* * * The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. * * *"

Nor does the asking for injunctive relief in a declaratory judgment action defeat the jurisdiction to hear and determine proper matters therein involved. It is proper to ask for and receive injunctive or other relief where the facts warrant it. See sections 27-701, 27-702, 27-703, A.C.A.1939; Hammond v. A. J. Bayless Markets, Inc., 58 Ariz. 58, 117 P.2d 490; Podol v. Jacobs, supra.

Defendant next contends the court erred in decreeing said option agreement illegal and void, and submits the proposition of law that ultra vires acts of a corporation can be challenged only by the state. Plaintiffs, as users of water and electric energy supplied by Eloy Company, may have the question of the validity of the contract affecting such utility service determined by a declaration of their rights, status and legal relations thereunder. Section 27-702, A.C.A.1939. The state need not institute such action.

The legality of the option agreement between Eloy Company and defendant is the gist of this controversy. Included in the properties sold thereunder are the following: "All water distribution properties owned by Seller—and expressly including those two certain wells, casing and pumping equipment."

Defendant Trico admits that when the sale is consummated Eloy Company will discontinue utility service, and defendant would own and operate the properties and facilities described in said option which included the water utility.

The articles of incorporation of defendant disclose that it has no charter power to engage in the business of furnishing water to any one, not even to its own members. With such limitation and restrictions, can the defendant lawfully contract for the purchase of the properties described in said option? To solve this problem we must interpret its articles of incorporation in accordance with well established principles of law.

 A corporation has only such powers as are expressly or impliedly conferred by its charter. Unlike a natural person, if may not do all things not expressly or impliedly prohibited, but must draw from its charter the power to act in any given respect, and can do only that which is expressly or impliedly authorized therein. A corporate charter is the index to the objects for which it was created and to the powers with which it has been endowed. The enumeration of certain powers operates as a limitation on such objects only as are embodied therein, and is an implied prohibition of the exercise of other and distinct powers, except such incidental powers as are reasonably necessary to accomplish the purposes for which it was organized. 19 C.J.S., Corporations, §§ 935, 939, pages 369, 371; 13 Am.Jur., Corporations, secs. 739, 743, pp. 770, 776. The charter of a corporation organized under general legislation consists of the provisions of the state constitution, the particular statute under which it is organized, and all other general laws which are made applicable to the corporation formed thereunder and its articles of incorporation. 18 C.J.S., Corporations, § 43. With respect to matters to which statutes do not apply, the articles of incorporation of the corporation control and are its fundamental and organic law. 18 C.J.S., Corporations, § 43. "* * * but in respect to those matters to which the statute does not apply the articles of incorporation govern. * * *" Orme v. Salt River Valley Water Users' Ass'n, 25 Ariz. 324, 217 P. 935, 941. See also Norwegian Old People's Home Soc. v. Willson, 176 Ill. 94, 52 N.E. 41.

These basic principles have found recognition in the constitution and statutory law of Arizona.

Article 14, section 4 of the Arizona constitution, provides: "No corporation shall engage in any business other than that ex-

pressly authorized in its charter or by the law under which it may have been or may hereafter be organized."

And in section 53-205, A.C.A.1939, it is said: "No corporation shall engage in any business other than that expressly authorized in its articles of incorporation or by the law under which it is organized."

The articles of incorporation of defendant Trico set forth the nature of the business, its objects and purposes, and among other things grants defendant power "To assist its members to * * * install * * * plumbing appliances, fixtures * * * and in connection therewith and for such purposes, to purchase, acquire, lease, sell, distribute, install and repair * * * plumbing appliances, fixtures * * * (including, * * * such as are applicable to water supply and sewage disposal) * * *." There is no reference to authority to furnish and distribute water for any purpose. Clearly the ownership and operation of a water utility is not within the powers granted by defendant's charter, and it is not alleged that said business is incident to or necessarily connected with the lawful purposes for which it was organized.

The rule is that a transaction ultra vires in the true sense, because beyond the power of the corporation to enter into it, is void and may not be validated by ratification or otherwise. The Supreme Court of the United States, in Central Trans. Co. v. Pullman's Palace Car Co., 139 U.S. 24, 11 S.Ct. 478, 488, 35 L.Ed. 55, announced such rule as follows: "* * * A contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either."

In McQueen v. First National Bank, 36 Ariz. 74, 283 P. 273, the supreme court of Arizona, expressly approved the rule laid down in Central Trans. Co. v. Pullman's Palace Car Co., supra. See also Consolidated National Bank v. Anglo & London Paris Bk., 34 Ariz. 160, 269 P. 68.

This court cannot construe the validity of this option contract on the assumption that defendant will subsequently amend its charter to empower it to do that which it cannot do under its charter as now constituted. We must decide the questions before us on the record as it now is, and not upon what defendant's members might do or cause to be done in the future by amendment of its articles. In Podol v. Jacobs, supra, we said [65 Ariz. 50, 173 P.2d 762]: "* * * We are confined to determining the law upon

the issues arising out of actual facts. We cannot determine what the law or rule may be upon a suppositious case. Mesa Mail Pub. Co. v. Board of Supervisors, 26 Ariz. 521, 227 P. 572; Bissell v. Spring Valley Tp., 124 U.S. 225, 8 S.Ct. 495, 499, 31 L.Ed. 411, in which the court said: 'Courts are not established to determine what the law might be upon possible facts, but to adjudge the rights of the parties upon existing facts, * * *.'"

■ Since the defendant contracted to purchase a water utility which by its charter it has no power to own and operate, the option agreement is ultra vires and void, and we need not consider or discuss the other matters urged by plaintiffs against the validity of said option agreement.

Defendant assigns as error the granting of plaintiffs' motion for judgment on the pleadings, on the ground its answer stated proper defenses recognizable under the law. Denials that plaintiffs were land owners, customers of and dependent upon Eloy Company for electric energy and water are only addressed to question of plaintiffs' capacity to sue. This issue was not properly presented. "* * * When a party desires to raise an issue as to * * * the capacity of any party to sue or be sued . * * * he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Section 21-413, A.C.A.1939.

■ If this issue is not raised by motion before the answer is filed, it must be set forth in the answer as an affirmative defense. Defendant must be held to have waived this objection. Section 21-436, A.C.A.1939; Chemacid S. A. v. Ferrotar, D.C., 3 F.R.D. 45; Kucharski v. Pope & Talbot, D.C., 4 F.R.D. 208.

■ The execution of the option agreement and that a controversy exists between the plaintiffs and the defendant with reference thereto is admitted. Most of the denials and affirmative allegations of defendant's answer plead at best only uncertain conclusions of law and fact. We find no issuable or material facts at issue in this case. Defendant's motion to dismiss plaintiff's amended complaint and motion for judgment on the pleadings, "* * * required the court to take into consideration the allegations of both the complaint and the answer and to determine therefrom whether the movant was entitled to judgment against his adversary. In determining that question the court necessarily assumed the truth of the material allegations of both pleadings. * * *" Snyder v. Betsch, 56 Ariz. 508, 109 P.2d 613, 615.

The court properly granted the motion for judgment on the pleadings. Judgment affirmed.

LaPRADE and UDALL, JJ., concur.

Chief Justice STANFORD having disqualified himself, the Honorable J. SMITH

GIBBONS, Judge of the Superior Court of Apache County, was called to sit in his stead.