443 P.2d 421

Adrian F. MORGAN, Administrator of the Estate of Teresa Ann Morgan, Deceased, Appellant,

v.

The COLORADO RIVER INDIAN TRIBE, an organized Indian Tribe, Appellee.

No. 9239–PR.

Supreme Court of Arizona, In Banc.

July 12, 1968.

**426**

Caine, Brigham & Hocker, by R. Kelly Hocker, Tempe, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John H. Lyons and Robert G. Beshears, Phoenix, for appellee.

BERNSTEIN, Justice.

The Appellee, Colorado River Indian Tribe, is an organized Indian tribe under the laws of the United States. 25 U.S.C.A. §§ 476–477. The tribe owns and operates, as a tribal enterprise, the Blue Water Marina Park. The park is located on the Arizona side of the Colorado River. The tribe exerts considerable effort to attract the general public into the park for the purpose of stimulating business for the corporate enterprise.

On August 18, 1964, Appellant's decedent, Teresa Ann Morgan, went swimming in the Colorado River adjacent to Appellee's business establishment. The area was used frequently by both swimmers and boaters. On the same day, Ralph Ramsey, Jr., together with a group of high school students, went water skiing in the same location. The boat operated by Ramsey struck and killed Miss Morgan.

Decedent's administrator brought a wrongful death action against the Colorado River Indian Tribe and other individual defendants not involved in this appeal alleging that the tribe, by failing to rope off and properly mark the area used by patrons of the enterprise, had negligently contributed to the death of decedent. The tribe filed a motion to dismiss based on its status as a dependent domestic sovereign immune from suit. The motion was granted by the Superior Court for Yuma County. The Court of Appeals, Division One, affirmed the decision of the Superior Court. 7 Ariz.App. 92, 436 P.2d 484. The decision of the Court of Appeals is vacated and the judgment of the Superior Court affirmed.

Both of the parties agree that the accident took place on the Arizona side of the Colorado River. The parties, however, disagree on the status of the submerged lands and navigable waters where the accident occurred. The Appellant contends that the fatal accident occurred "outside" of the exterior boundaries of the Colorado River Indian Reservation. It is Appellee's position that ownership in the submerged lands and navigable waters was conveyed to the Indian tribe through prior executive decree, and that the fatal accident therefore occurred "within" the Indian reservation.

The Colorado River Indian Reservation was originally created by Act of Congress in 1865. 13 Stat. 541, 559. Its area was subsequently increased by a series of Executive Orders. 1 U. S. Dept of the Interior, Executive Orders Relating to Indian Reservations 6–7 (1912). An order issued by President Grant on May 15, 1876 includes both the Blue Water Marina Park and that portion of the Colorado River where the accident occurred. Since this Executive Order antedated Arizona's admission into the Union by 36 years, Appellee contends that the state was constitutionally prohibited under its disclaimer clause from asserting any interest in these submerged lands. Arizona Constitution, Article XX, Paragraph Fourth, A.R.S.

It was in Pollard v. Hagan, 3 How. 212, 11 L.Ed. 565 (1845) and Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894) that the United States Supreme Court first enunciated the doctrine that lands underlying navigable waters within territory acquired by the Government were held in trust for future states upon admission into the Union. The doctrine of State Ownership is explained by Rufford G. Patton, writing in the American Law of Property, Vol. III, § 12.27b at 248, 249.

"The doctrine is well established that one of the incidents of sovereignty *is control of navigable waters and ownership of land thereunder* * * * Except for the few portions of these lands which passed to private ownership by virtue of royal grants, title vested at the date of its independence in each original state as to the *navigable waters* and the *land thereunder* within its boundaries * * * On the formation of each new state, it becomes the owner of the land underlying *its* navigable waters, *again excepting those portions which have been granted away by a previous sovereignty.*" (Emphasis added.)

The Colorado River has been declared navigable waters. The State of Arizona would therefore hold title to its submerged lands and navigable waters unless the Executive Order of May 15, 1876 divested it of any future interest in these lands and waters.

The Appellee, in asserting that ownership of the river and beds resided in the Colorado River Tribe, refers us to the cases of Alaska Pacific Fisheries v. United States, 248 U.S. 78, 39 S.Ct. 40, 63 L.Ed. 138 (1918) and Moore v. United States, 157 F.2d 760 (9th Cir., 1946). In *Alaska Pacific Fisheries,* the United States Supreme Court held that Congress, by creating an Indian Reservation for the Metlakahtla Indians of Alaska, "specifically intended" to include submerged lands and navigable waters in their grant to the tribe. In *Moore,* the Ninth Circuit found that President Cleveland "specifically intended" to include beds and waters within his Executive Order de-

fining boundaries of the Quillayute Indian Reservation. In both cases cited by the Appellee, the results were based on the peculiar needs and almost total dependency of these tribes to the vocations of hunting and fishing. Even though President Grant could have reserved the beds and waters to the Colorado River Indian Tribe, his order of 1876 lacked the "clear intention" necessary to make such a conveyance. United States v. Holt State Bank, 270 U.S. 49, 58, 46 S.Ct. 197, 200, 70 L.Ed. 465, 470 (1926). There has been no "peculiar need" shown in this case which would infer Executive Intent that submerged lands and navigable waters be included in the grant of May 15, 1876. We therefore hold that the State of Arizona holds title and control over the submerged lands and navigable waters where the accident occurred.

■ We are asked to decide if our state courts can take jurisdiction over an Indian tribe which has committed a tort while engaged in a business enterprise within this state and outside of the exterior boundaries of its reservation.

An impressive body of law has developed recognizing the immunity of Indian tribes from suit. Thebo v. Choctaw Tribe, 66 F. 372 (8th Cir. 1895); Adams v. Murphy, 165 F. 304 (8th Cir. 1908); Turner v. United States and Creek Nation of Indians, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919); United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); Haile v. Saunooke, 246 F.2d 293 (4th Cir. 1957); Maryland Casualty Company v. Citizens National Bank of West Hollywood, 361 F.2d 517 (5th Cir. 1966). See also Oliver, The Legal Status of American Indian Tribes, 38 Ore.L.Rev. 193 at 228–230; Note, Indians: Suit against Indians and Indian Tribes, 11 Okla.L.Rev. 217. The law, as stated by the Supreme Court in the United States Fidelity case, provides

"The public policy which exempted the dependent as well as the dominant sovereignties from suit without consent continues this immunity even after dissolu-

tion of the tribal government. *These Indian Nations are exempt from suit without Congressional authorization."* 309 U.S. at 512, 60 S.Ct. at 656 (Emphasis added.)

It is clear that Congress alone must determine the extent to which immunities afforded tribal status are to be withdrawn. Haile v. Saunooke, supra. The fact that the Colorado River Indian Tribe was engaged in a proprietary function is immaterial. In the *Maryland Casualty Company* case, the Fifth Circuit said

"The fact that the Seminole Tribe was engaged in an enterprise private or commercial in character, rather than governmental, is not material. It is in such enterprises and transactions that the Indian tribes and the Indians need protection." 361 F.2d at 521.

Appellant contends that the case of Martinez v. Southern Ute Tribe is an exception to the doctrine of tribal immunity. In *Martinez,* Plaintiff, child of a full blooded Ute Indian, was expelled from membership in the Southern Ute Indian Tribe. The tribe had, like the Appellee, been organized pursuant to 25 U.S.C.A. §§ 476–477. The tribe's Articles of Incorporation provided that all persons enrolled on the 1935 census of the tribe and possessing at least one-half degree of Ute Indian Blood would be eligible for membership. The Plaintiff qualified under both of these provisions. When the tribe expelled Plaintiff from membership, she instituted proceedings in the Federal courts. The tribe's motion to dismiss for lack of jurisdiction was granted by the United States District Court for the District of Colorado, 151 F.Supp. 476, and affirmed by the Tenth Circuit. 249 F.2d 915. The Plaintiff then instituted proceedings in the Colorado state courts. The Supreme Court

of Colorado held that their courts had jurisdiction over the tribe. 150 Colo. 504, 374 P.2d 691. That case is distinguishable in one important fact not present in this case. In *Martinez,* the corporate charter of the tribe specifically provided that it had a capacity to sue and be sued. The Colorado Supreme Court emphasized that the tribe's consent to be sued rendered it amenable to suit in Colorado state courts. In the instant case, the Colorado River Indian Tribe has not consented to suit, either in its bylaws or Articles of Incorporation.

 We hold that the Colorado River Indian Tribe, being a dependent sovereign immune from suit, cannot be subjected to the jurisdiction of our courts without its consent or the consent of Congress.[1]

Judgment affirmed.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

---

1. This case demonstrates the unique legal status enjoyed by the Indian tribes. If the alleged tort-feasor under an identical state of facts had been a state or municipal government, Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963), the Federal Government, 28 U.S. C.A. §§ 1346, 1402, 1504, 2110, 2401, 2411, 2412, 2671–2680, or a foreign na-

tion, Victory Transport, Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354 (2nd Cir. 1964), See Bishop, New United States Policy Limiting Sovereign Immunity, 47 Am.J. Int'l L. 93 (1953), it would have been amenable to suit in either state or federal courts.