Robert A. COGO and Doris
Volzke, Plaintiffs,

v.

CENTRAL COUNCIL OF the TLINGIT
AND HAIDA INDIANS OF
ALASKA, Defendant.

Civ. No. J78–10.

United States District Court,
D. Alaska.

March 7, 1979.

Charles· L. Cloudy, Ketchikan, Alaska, Frederick Paul, Seattle, Wash., for plaintiffs.

Bruce Monroe, Juneau, Alaska, Richmond F. Allan, Casey, Lane & Mittendorf, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on defendant's motion to dismiss. The plaintiffs are enrolled members of the Tlingit and Haida Indians of Alaska who are suing the Central Council of Tlingit and Haida Indians of Alaska on the behalf of their grandchildren as guardians *ad litem.* The plaintiffs seek to have their grandchildren enrolled as members of the tribe and the Central Council ordered to prepare and submit a plan to the Secretary of the Interior for the utilization of the judgment fund that resulted from *Tlingit and Haida Indians of Alaska v. United States,* 389 F.2d 778, 182 Ct.Cl. 130 (1968). This case was originally filed in the Superior Court of the State of Alaska and removed to this court under 28 U.S.C. § 1441(b).

The defendant contends that this suit must be dismissed on three grounds: 1) The court lacks jurisdiction over the Central Council because it is immune from suit; 2) The State court from which this case was removed lacked jurisdiction and therefore this court lacks jurisdiction; and 3) The United States, as trustee of the judgment funds managed by the Central Council, is an indispensable party that has not been joined and cannot be joined because it is immune from suit. The court finds merit in all three of the defendant's grounds for dismissal.

*Sovereign Immunity*

As one court has noted, "An impressive body of law has developed recognizing the immunity of Indian tribes from suit." *Morgan v. Colorado River Indian Tribe,* 103 Ariz. 425, 443 P.2d 421, 423 (1968). *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *Puyallup Tribe v. Washington Dept. of Game,* 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977); *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Adams v. Murphy,* 165 F. 304 (8th Cir. 1908); *Thebo v. Choctaw Tribe,* 66 F. 372

(8th Cir. 1895); *Atkinson v. Haldane,* 569 P.2d 151 (Alaska 1977). The doctrine of sovereign immunity has been applied to Indian tribes for at least three reasons. First, the Indian tribes were once sovereign nations and were accorded the common-law immunity traditionally enjoyed by sovereign powers. *Santa Clara Peublo,* 436 U.S. at 58, 98 S.Ct. 1670. Second, the sovereign immunity of the dominant sovereign, the United States, also provides protection for the dependent sovereign, the Indian tribe, where the United States acts as trustee for the tribe. *Cf. United States v. U. S. Fidelity and Guaranty Co.,* 309 U.S. at 512, 60 S.Ct. at 656 ("The public policy which exempted the dependent as well as the dominant sovereignties from suit without consent continues this immunity even after dissolution of the tribal government.") *See also Hamilton v. Nakai,* 453 F.2d 152, 158–59 (9th Cir. 1972). Third, sovereign immunity is intended to protect what assets the Indians still possess from loss through litigation. "That has been the settled doctrine of the government from the beginning. If any other course were adopted, the tribes would soon be overwhelmed with civil litigation and judgments." *Adams v. Murphy,* 165 F. at 308–09. If tribal assets could be dissipated by litigation, the efforts of the United States to provide the tribes with economic and political autonomy could be frustrated.

The plaintiffs contend that sovereign immunity does not apply to the Central Council of Tlingit and Haida Indians of Alaska because it is not a "tribe" but simply an organization created or recognized by Congress. The plaintiffs argue that the tribal entities that possess governmental powers are the village councils in the Tlingit-Haida region organized traditionally or under the Indian Reorganization Act, 25 U.S.C. §§ 461–79 (1976).

The Act of June 19, 1935, 49 Stat. 388, authorized the Court of Claims to hear and determine the damage and land claims "of said Tlingit and Haida Indians of Alaska." § 3, 49 Stat. 388. In the Court of Claims decisions that resulted from this jurisdictional act, the Tlingit and Haida Indians of Alaska were awarded $7,546,053.80. *Tlingit and Haida Indians of Alaska v. United States,* 177 F.Supp. 452, 147 Ct.Cl. 315 (1959), 389 F.2d 778, 182 Ct.Cl. 130 (1968). The Act of August 19, 1965, Public Law 89–130, 79 Stat. 543, amended the 1935 Act by designating the defendant Council as "the official Central Council of Tlingit and Haida Indians for purposes of this Act" and authorized the Council to prepare plans for the use of the judgment funds.[1]

---

1. The Act of August 19, 1965, provides in part:

    Sec. 7. Upon submission to the Secretary of the Interior by the existing organization known as the Central Council of the Tlingit and Haida Indians of Alaska or by a committee duly appointed by such central council, of rules prescribing the method of election of delegates to the central council which the Secretary finds to be equitable and to be designed to assure, to the extent feasible, fair representation on the central council to persons of Tlingit or Haida blood who reside in the various local communities or areas in the United States or Canada, the Secretary, in his discretion, is authorized to approve such rules. The Central Council of Tlingit and Haida Indians, composed of delegates elected in accordance with such approved rules and their duly elected successors in office, shall be the official Central Council of Tlingit and Haida Indians for purposes of this Act. Any amendments to such rules shall be subject to the approval of the Secretary.

    "Sec. 8. The amount of the appropriation made to pay any judgment in favor of said Tlingit and Haida Indians of Alaska shall be deposited in the Treasury of the United States to the credit of the Tlingit and Haida Indians of Alaska, and such funds shall bear interest at the rate of 4 per centum per annum. Such funds including the interest thereon shall not be available for advances, except for such amounts as may be necessary to pay attorney fees, expenses of litigation, organizational, operating and administrative expenses of the official Central Council, and expenses of program planning, until after legislation has been enacted that sets forth the purposes for which said funds shall be used. The Council is authorized to prepare plans for the use of said funds, and to exercise such further powers with respect to the advance, expenditure, and distribution of said funds as may be authorized by Congress. In order to facilitate the prompt use and distribution of said funds, the Secretary of the Interior, pursuant to such rules and regulations as he may prescribe, is authorized and directed to prepare a roll of all per-

In 1968 the money to pay the judgment was appropriated by the Congress. 82 Stat. 307. In 1970 Congress finally authorized the distribution of the appropriated money. The Congress stated that the funds "may be advanced, expended, invested or used for any purpose and in any manner authorized by the Central Council of the Tlingit and Haida Indians of Alaska and approved by the Secretary of the Interior." 25 U.S.C. § 1211 (1976).[2] In the Constitution of the Central Council of the Tlingit and Haida Indians of Alaska adopted on April 17, 1973, the function of the Council is described in Article I.

The functions of the Central Council of the Tlingit and Haida Indians of Alaska shall be to serve as the general governing body of the Tlingit and Haida Indians of Alaska, to promote their welfare, and to exercise the powers granted by the Act of June 19, 1935 (49 Stat. 388), as amended by the Act of August 19, 1965 (79 Stat. 543), and such other powers as it may lawfully exercise or be granted.

█ "Plenary authority over the tribal relations of the Indians has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to be controlled by the judicial department." *Lone Wolf v. Hitchcock,* 187 U.S. 553, 565, 23 S.Ct. 216, 221, 47 L.Ed. 299 (1903). *See also United States v. Kagama,* 118 U.S. 375, 384, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). If the Congress and the Executive have determined that a group of Indians is a tribe or the political representative of the tribe for the purpose of defining its relationship to the United States and its powers and attributes as a tribal government that decision is respected by the Judicial branch of government. *The Kansas Indians,* 5 Wall. 737, 72 U.S. 737, 755–57, 18 L.Ed. 667 (1866); *United States v. Holliday,* 3 Wall. 407, 70 U.S. 407, 419, 18 L.Ed. 182 (1865). *Atkinson v. Haldane,* 569 P.2d 151, 162 (Alaska 1977). *Cf. Chippewa Indians of Minnesota v. United States,* 307 U.S. 1, 59 S.Ct. 687, 83 L.Ed. 1067 (1938) (Action by Congress which recognized the Chippewas of Minnesota after the dissolution of tribal relations respected by the Court).

Whatever may have been the traditional political organization of the Tlingits and Haidas, *see Tlingit and Haida Indians of Alaska v. United States,* 177 F.Supp. 452, 147 Ct.Cl. 315 (1959), Senate Report No. 91–848, 91st Cong., 2nd Sess., pp. 11–14 (1970), the Congress, through the Acts referred to above, has recognized the Central Council as the political representative of the Tlingit and Haida Tribe, at least for the purposes of planning the utilization of the judgment fund.

The Executive branch has also recognized the Central Council as the representative of the tribe. In a memorandum from Morris Thompson, Commissioner of Indian Affairs to the Area Director of the Bureau of Indian Affairs, dated July 24, 1975, the Commissioner stated:

Recently I had the pleasure of meeting with Mr. Ray Paddock and others. In conjunction with our discussion, the status of the Tlingit and Haida Central

---

sons of Tlingit or Haida blood who reside in the various local communities or areas of the United States or Canada on the date of this Act. The costs of preparing such roll incurred subsequent to the appropriation to pay any judgment shall be deducted from such judgment funds. Any part of such funds that may be distributed per capita to persons of Tlingit or Haida blood shall not be subject to Federal or State income taxes." 79 Stat. 543, 543–44.

**2.** 25 U.S.C. § 1211 states:

The unexpended funds and interest thereon on deposit in the Treasury of the United States to the credit of and otherwise invested by the Secretary of the Interior for the account of the Tlingit and Haida Indians of Alaska which were appropriated by the Act of July 9, 1968 (82 Stat. 307), to pay the judgment of the Court of Claims in the case entitled *The Tlingit and Haida Indians of Alaska, et al. versus The United States,* numbered 47900, after payment of attorney fees and expenses, may be advanced, expended, invested or used for any purpose and in any manner authorized by the Central Council of the Tlingit and Haida Indians of Alaska and approved by the Secretary of the Interior. Any of such funds that may be distributed under the provision of this [subchapter] shall not be subject to Federal or State income taxes.

Council as a representative tribal organization was considered. It was reported that some questions had been raised as to whether the Bureau recognized the Tlingit and Haida Tribes and the Central Council as empowered to speak on behalf of those Tlingit and Haida people that adhere to the organization.

We were surprised that doubts continued to exist among our Juneau staff as to whether the Tlingit and Haida Central Council was recognized as a tribal organization. That body is duly recognized as speaking for the tribal membership. Rules prescribing the method of election of delegates to the Central Council have been approved by the Secretary of the Interior.

As you know, a contract for general counsel services has long existed between the Central Council of the Tlingit and Haida Indians of Alaska and the Weissbrodt firm. That contract and its extensions have been approved by the Secretary under authority as provided by 25 U.S.C.A. § 81, which governs agreements made between persons and Indian tribes.

Finally, in the Department's publication entitled *American Indians and their Federal Relationship,* the Tlingit and Haida are listed on page 6 as an Alaska Native organization having an approved constitution, which in the case of the Tlingit and Haida Central Council is the election rules approved by the Department in 1966.

Hopefully, the general explanations offered in this letter will clarify for all concerned that it is the view of the Bureau that the Tlingit and Haida Central Council is a tribal entity representing the Tlingit and Haida Indians of Alaska.

■ The plaintiffs' point out that for the purposes of the Indian Self-Determination Act, 25 U.S.C. §§ 450–450n (1976) the Commissioner of Indian Affairs ruled that the Central Council did not have authority as a tribal unit to consent to the BIA's contracting its services to the Central Council, but rather, consent had to be given by the respective village councils. *See generally American Indian Policy Review Commission, Final Report* 494–97 (1977).[3] Whatever, the policy of the Commissioner under the Self-Determination Act, the Council is the recognized tribal government for the purposes of managing the judgment fund. The Self-Determination Act states

Nothing in this Act shall be construed as—

(1) affecting, modifying, diminishing, or otherwise impairing the sovereign immunity from suit enjoyed by an Indian tribe; or

(2) authorizing or requiring the termination of any existing trust responsibility of the United States with respect to the Indian people.

25 U.S.C. § 450n. Since this suit relates to the Central Council's authority in managing the judgment fund, the status of the Central Council for the purpose of sovereign immunity is determined by the statutes concerning that judgment fund. The Central Council is the *recognized governing body* of the Tlingit and Haida Tribes for the purpose of planning and managing the utilization of the judgment fund and is therefore immune from suits relating to the disposition of that fund.

*Derivative Jurisdiction*

■ The Alaska Supreme Court has held that the state courts do not have jurisdiction over cases involving issues of tribal membership and rights in trust property. *Ollestead v. Native Village of Tyonek,* 560 P.2d 31 (Alaska 1977). If the state court lacks jurisdiction of the subject matter, the federal court acquires no jurisdiction upon removal even though the federal court may have had jurisdiction in a suit originally brought there. *Lambert Run Coal Co. v. Baltimore & Ohio R. R.,* 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922). This case must be dismissed because the state court lacked jurisdiction over the subject matter.

---

**3.** "Indian tribe" for the purposes of the Indian Self-Determination Act is defined in 25 U.S.C. § 450b(b). "Tribal organization" is defined in § 450b(c).

*United States as Indispensable Party*

■ The United States holds the judgment funds in trust for the Tlingit and Haida Tribes but could not be joined in this suit because of sovereign immunity. The United States is an indispensable party in a suit affecting property which it holds in trust for Indians or Indian tribes. *Cheyenne River Sioux Tribe v. United States,* 338 F.2d 906, 909–10 (8th Cir. 1964); *Green v. Wilson,* 331 F.2d 769 (9th Cir. 1964). *Nicodemus v. Washington Water Power Co.,* 264 F.2d 614 (9th Cir. 1959). *First Nat'l Bank of Holdenville, Okla. v. Ickes,* 81 U.S.App.D.C. 61, 154 F.2d 851 (1946). The inability to join the United States as a party requires the dismissal of this case. Fed.R.Civ.P. 19(b). *See Johnson v. Chilkat Indian Village,* 457 F.Supp. 384 (D.Alaska 1978).

Accordingly IT IS ORDERED:

1. THAT defendant's motion to dismiss is granted.

2. THAT the Clerk may prepare an appropriate final judgment form.