739 P.2d 1360

**LAND DEPARTMENT, and Robert K. Lane, Land Commissioner, State of Arizona, Petitioners,**

v.

**The Honorable Thomas W. O'TOOLE, Judge of the Superior Court, Maricopa County, Respondent Judge,**

**MARICOPA COUNTY; Flood Control District of Maricopa County; City of Tempe; Tanner Companies; Tanner Land Company, Inc.; Calmat Company of Arizona; Thomas M. Valente and Frances K. Valente, Real Parties in Interest.**

**1 CA–SA 059.**

Court of Appeals of Arizona, Division 1, Department C.

July 14, 1987.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., Phoenix, for petitioners State of Ariz., Land Dept. and State Land Com'r.

Thomas P. Collins, Maricopa Co. Atty. by G. Eugene Neil, Deputy Co. Atty., Phoenix, for real party in interest Maricopa County.

Helm & Kyle, Ltd. by John D. Helm, Tempe, Special Counsel to Maricopa County.

David R. Merkel, Tempe City Atty. by C. Brad Woodford, Asst. City Atty., Tempe, for real party in interest City of Tempe.

Larry J. Richmond, P.C. by Larry J. Richmond, Julie M. Lemmon, Phoenix, for real party in interest Maricopa Flood Control Dist.

Snell & Wilmer by Robert B. Hoffman, Bruce P. White, Phoenix, for real parties in interest Tanner Companies, Tanner Land Co., Calmet Co. & Valentes.

## OPINION

CORCORAN, Judge.

### 1. *Background*

This matter arises from a December 1985 Arizona Republic article in which Robert K. Lane, Land Commissioner, and Governor Bruce Babbitt were quoted as saying that Arizona may own, and may assert its right to, riverbeds which were navigable on February 14, 1912, when Arizona became a state. The federal Equal Footing Doctrine grants each state property rights to the riverbeds of all its waterways which were navigable on the date of statehood.

Before the article appeared, Arizona apparently had never asserted a claim of title to the Salt River bed or to any other river or stream bed in Maricopa County based on a claim of navigability at statehood. Indeed, since statehood Arizona has uniformly taxed the property of riparian landowners as if they held clear title to the waterway beds.

Maricopa County, an owner and purchaser of riverbed lands in Maricopa County, filed a declaratory judgment suit in superior court against the State, the Land Department, and Land Commissioner Lane (collectively referred to as the State) seeking a declaration whether the State owns any of the beds.[1]

---

1. While this special action was pending, a new statute created a procedure whereby landowners affected by the State's potential claims can apply to the Land Department for a deed disclaiming any State interest in these properties. Laws 1987, ch. 127. We do not address the impact of this statute. The trial court should have the first opportunity to assess the impact which the change in statutory law will have on the claims in the trial court.

The Maricopa County Flood Control District (the District) and the City of Tempe (Tempe) intervened as plaintiffs. Johnson-Stewart-Johnson Mining Company and other landowners on the Agua Fria River in Maricopa County (collectively Johnson) also intervened as plaintiffs suing the State to quiet title, pursuant to the quiet title act, A.R.S. §§ 12–1101 through –1104. In accordance with § 12–1103(C), the Attorney General determined the Agua Fria River was not navigable at statehood and disclaimed any state interest. The parties stipulated to Johnson's dismissal from the action.

Before its dismissal, Johnson's motion to compel joinder of all Maricopa County riverbed landowners, claiming they were indispensable parties, was denied by the trial court. Rule 19(a), Arizona Rules of Civil Procedure. The court then *sua sponte* ordered a realignment of the parties, with the State redesignated as plaintiff. The state was ordered to pursue the case as a class action against the "defendant" class, consisting of the former plaintiffs. All plaintiffs were redesignated as defendants who would "represent the non-state property owner class." The parties were ordered to meet and discuss the class action aspects of the case. The most important problem was the large cost of notice to an enormous number of class members. After briefing on cost of notice to the defendant class, the court decided that the State should bear that cost. The State filed a motion for reconsideration of the *sua sponte* realignment order, which the court denied.

The State then moved for reconsideration of the court's order regarding notice costs. The Land Commissioner, by affidavit, informed the court that the State had not made any claims to riverbeds in Maricopa County because the threshold question of navigability had not been determined and no funding had been provided by the legislature for navigability studies or title searches. The commissioner estimated that the studies would cost at least $200,-000, that the potential class would number in the tens of thousands, and that notice would cost hundreds of thousands of dollars.

The trial court denied the State's motion for reconsideration and ordered the State to give immediate notice to certain class members and to submit a report by December 1, 1986, explaining the scope of the State's claims to riverbeds.

Thereafter, Tanner Companies, Tanner Land Company, Calmat Company and the Valentes (Tanner) intervened as defendants in the realigned proceedings. The State unsuccessfully moved to dismiss the "complaints" by the County, the District and Tempe.

■ The State has no right of appeal from the order denying a motion to dismiss, from the court's *sua sponte* creating a class and realigning parties, or from ordering it to pay class notice costs. Thus, special action review is the only immediate remedy available.

We conclude that the court's rulings were "without precedent or support in the law and [cannot] be justified." *King v. Superior Court,* 138 Ariz. 147, 150, 673 P.2d 787, 790 (1983). This case concerns a potential cloud on the title of many parcels of land. The State claims that hundreds of millions, if not billions, of dollars' worth of land in Arizona's most populous county are at issue. Adjudicating the matter expediently is in the public's best interest, and we therefore accept review of this case.

This special action involves several issues. The one which we find dispositive is whether the quiet title act is the exclusive remedy in a quiet title action against the State. We so hold and remand with leave for claimants to amend their complaint. Therefore, we do not address the issues of whether the court acted in excess of its jurisdiction in *sua sponte* creating a class action or whether it abused its discretion in realigning the parties.

### 2. *The Equal Footing Doctrine*

The Equal Footing Doctrine, as enacted, grants to each state, upon statehood, title to the beds of all navigable streams within its borders. 43 U.S.C. § 1311 (1983); *Kansas v. Colorado,* 206 U.S. 46, 27 S.Ct. 655, 51 L.Ed. 956 (1907). *See also Pollard v.*

*Hagan,* 44 U.S. (3 How.) 212, 11 L.Ed. 565 (1845); *Morgan v. Colorado River Indian Tribe,* 103 Ariz. 425, 443 P.2d 421 (1968).

In *Pollard* the court noted that those states established after the original 13 were given ownership of navigable river beds flowing within their boundaries so as to be on an "equal footing" with the original states which had already been granted ownership of their navigable riverbeds. The doctrine of state ownership was also discussed in *Morgan:*

> The doctrine is well established that one of the incidents of sovereignty *is control of navigable waters and ownership of land thereunder....* On the formation of each new state, it becomes the owner of the land underlying *its* navigable waters....

103 Ariz. at 427, 443 P.2d at 423, quoting III R.G. Patton, *American Law of Property* § 12.27(b) at 248–49.

Arizona has numerous rivers. The best known, the Colorado River, is navigable. *Morgan,* 103 Ariz. at 427, 443 P.2d at 423. *See also Arizona v. California,* 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154 (1931). Counsel have not cited, and we cannot find, a case determining the navigability and ownership of any other river. Until recently the State has not claimed any riverbed lands other than those along the Colorado. In 1985, the State claimed ownership of the Verde River near Cottonwood in Yavapai County because it was navigable at statehood. *State of Arizona v. Valley Concrete and Materials,* No. 45245 (Yavapai County Superior Court, filed April 26,

1985). The State's claim in that case generated speculation that the State may also claim other riverbeds based on their navigability. Title companies now put an exclusion as to possible State claims in title policies covering riverbed lands.

### 3. *The Exclusivity of the Quiet Title Remedy*

Aside from the state's § 12–1103(C) disclaimer of title to the Agua Fria riverbed, the State has not made any determination or claim as to navigability of streams in Maricopa County.[2] However, the State acknowledges that a cloud remains on the title to riverbed lands.

The legislature has specifically created the quiet title act for a landowner to dispel that cloud. Ariz. Const. art. 4, § 18, part 2, provides: "The Legislature shall direct by law in what manner and in what courts suits may be brought against the State." Several portions of the quiet title act deal specifically with procedures to follow when the State is involved. For example, one section deals with service of a complaint against the State, while another section requires the complaint to specify any claim the State may have against a plaintiff. Other sections exempt the State from paying the adverse parties' costs and attorneys' fees in specific cases, and allow the State to disclaim any interest in specific property.[3]

■ This statutory scheme demonstrates that the legislature has provided a specific procedure to remove a cloud on real proper-

---

**2.** The plaintiff in a quiet title action generally has the burden of establishing title. *Allison v. State,* 101 Ariz. 418, 420 P.2d 289 (1966), but the question of navigability is one of fact as to which the burden of proof rests upon the party asserting such navigability unless the court takes judicial notice of its status in this respect. 78 Am.Jur.2d *Waters* § 71 (1975).

**3.** A.R.S. § 12–1101(B) provides:
> When the state is made defendant a copy of the summons and complaint shall be served upon the attorney general.

A.R.S. § 12–1102(4) provides:
> When the state is made defendant, the complaint shall set forth with particularity or on information or belief the claim of the state adverse to plaintiff.

Further, A.R.S. § 12–1103(A) states:
> If defendant, other than the state, appears and disclaims all right and title adverse to plaintiff, he shall recover his costs.

A.R.S. § 12–1103(B) states:
> If a party ... requests the person, other than the state, holding an apparent adverse interest ... to execute a quit claim deed ... and if such person refuses or neglects to comply, ... the court may allow plaintiff, in addition to the ordinary costs, an attorney's fee.

Finally, A.R.S. § 12–1103(C) provides:
> If, after appropriate investigation, it appears to the attorney general that the state claims no right or title to the property adverse to plaintiff, he may file a disclaimer of right and title.

ty by quieting title against the State. The trial court, in denying the State's motion to dismiss, held that jurisdiction also lies under the Uniform Declaratory Judgments Act, A.R.S. §§ 12–1831 through –1846. The State argues that the trial court erred because the quiet title act should be the exclusive remedy available to a private landowner in this situation. We agree and grant the State relief on that basis.

The existence of another remedy does not always preclude declaratory relief, but declaratory judgment jurisdiction will not ordinarily be entertained where another equally or more appropriate remedy is available. *See generally* 26 C.J.S. *Declaratory Judgments* § 17 (1956).

■ Declaratory relief is not appropriate in this case because claimants desiring to quiet title to land against the State can bring a quiet title action. The declaratory judgment procedure is not designed to furnish an additional remedy where an adequate one exists. *Rainwater v. Merriman*, 127 Ind.App. 520, 142 N.E.2d 467 (1957). *But see Trico Elec. Corp. v. Ralston*, 67 Ariz. 358, 196 P.2d 470 (1948); *Podol v. Jacobs*, 65 Ariz. 50, 173 P.2d 758 (1946).

In a similar case, the United States Supreme Court held that the federal quiet title act is an exclusive remedy and that neither declaratory relief nor a common law cause of action was available to adverse claimants wishing to challenge title of the United States. In *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), that state filed suit to resolve a dispute over ownership of certain portions of a riverbed. The United States claimed title to most of the disputed area as a riparian landowner on a non-navigable river, while North Dakota asserted that the river was navigable at its statehood and that it therefore owned the riverbed. The court held that the federal quiet title act was the exclusive remedy available to the state because a precisely drawn, detailed statute preempts more general remedies. 461 U.S. at 285, 103 S.Ct. at 1819, 75 L.Ed.2d at 852.

The declaratory relief sought in *Block* parallels the request for declaratory relief in this case. Although *Block* is not binding in interpreting Arizona's quiet title act, we find its reasoning persuasive. In Arizona, a specific statute governs over a general statute on the same subject. *Berry v. State*, 145 Ariz. 12, 699 P.2d 387 (App. 1985).

■ We find declaratory relief inappropriate at this time for another reason. Generally, a declaratory judgment action is appropriate only in an actual case or controversy of a justiciable nature. *Board of Supervisors v. Woodall*, 120 Ariz. 391, 586 P.2d 640, *affirmed in part, reversed in part on other grounds*, 120 Ariz. 379, 586 P.2d 628 (1978); *Arizona State Bd. of Dir. v. Phoenix Union H.S. Dist.*, 102 Ariz. 69, 424 P.2d 819 (1967). To vest a court with declaratory judgment jurisdiction, the claimant must show sufficient facts to establish a controversy which is real and not merely colorable. *Planned Parenthood v. Marks*, 17 Ariz.App. 308, 497 P.2d 534 (1972). Finally, declaratory relief should be based on an existing state of facts, not those which may or may not arise in the future. *Lake Havasu Resort v. Commercial Loan Ins. Corp.*, 139 Ariz. 369, 678 P.2d 950 (App.1983).

In this case, claimants' allegations are much too amorphous and imprecise to constitute a case or controversy. For a justiciable controversy to exist, a complaint must assert a legal relationship, status or right in which the party has a definite interest *and an assertion of the denial of it by the other party.* A.R.S. § 12–1832; *Morris v. Fleming*, 128 Ariz. 271, 273, 625 P.2d 334, 336 (App.1980). Here, the State has not asserted its ownership of lands to which the other parties claim title. No showing has been made that the parties have adverse claims to the lands in question, so no justiciable controversy exists and declaratory relief is inappropriate. *See generally* 1 W.H. Anderson, *Actions for Declaratory Judgments* § 34 (2d ed. 1951).

We remand and direct the trial court to dismiss the declaratory judgment claims and to grant a reasonable period of time

**48**

for the claimants to amend their complaints to assert quiet title claims. We do not address: (1) whether the underlying action should be a class action; (2) whether it was appropriate to realign the parties or to shift the burden of class notice costs; and (3) whether the doctrine of separation of powers is implicated. Finally, we vacate the orders from which this special action arises.

EUBANK and FROEB, JJ., concur.