# Supreme Court of the Navajo Nation

Daisy Johnson, as Guardian of Clifford Gould
and Clifford Gould, *Plaintiffs-Appellants,*
*vs.*
The Navajo Nation, John Doe and Other Unknown
Individual Police Officers of the Navajo Nation,
Individually, *Defendants-Appellees.*
Decided October 20, 1987

## OPINION

*Before Tso, Chief Justice, Bluehouse and Austin, Associate Justices.*

*F. D. Moeller, Esq., Farmington, New Mexico for the Appellants; Joseph L. Rich, Esq. Gallup, New Mexico for the Appellees.*

*Opinion delivered by Austin, Associate Justice.*

The plaintiffs, Daisy Johnson and Clifford Gould, appealed the Order entered by the Shiprock District Court, which dismissed their suit against the defendants, the Navajo Nation and other unknown Navajo Police Officers, on sovereign immunity grounds. The numerous issues raised on appeal can be summarized as follows: (1) whether the Navajo Nation can be sued pursuant to the insurance exception of the Navajo Sovereign Immunity Act, 7 N.T.C. Sec. 854(c) (1980), where the insurance carrier becomes insolvent after suit is filed; and (2) whether the Indian Civil Rights Act, 25 U.S.C. Sec. 1301 *et seq.* (1968), is explicit federal law, which authorizes suit against the Navajo Nation pursuant to the Navajo Sovereign Immunity Act, 7 N.T.C. Sec. 854(a) (1980).

On November 15, 1983, the plaintiffs sued the Navajo Nation and unidentified Navajo Police Officers on a theory of gross negligence. The plaintiffs alleged that the incidents resulting in physical injuries to plaintiff Gould occurred on or about September 10, 1983. The plaintiffs alleged district court jurisdiction pursuant to the insurance exception of the Navajo Sovereign Immunity Act, 7 N.T.C. Sec. 854(c) (1980), and under

the Indian Civil Rights Act, 25 U.S.C. Sec. 1301 *et seq.* (1968), which the plaintiffs alleged was explicit federal law allowing suit against the Navajo Nation pursuant to the Navajo Sovereign Immunity Act, 7 N.T.C. Sec. 854(a) (1980).[1]

On January 5, 1984, the defendants filed a motion to dismiss the complaint by alleging that: "There is a reservation of rights by the insurance carrier in which they deny such coverage in any claim asserting punitive damages. Under such reservations of rights the Navajo Nation is immune." Defendant's Memorandum in Support of Motion to Dismiss at 1, 2. The court denied the motion to dismiss on January 10, 1984. The defendants then filed a notice of appeal of the denial of their motion to dismiss on February 16, 1984. The appeal was denied on June 25, 1984, because "the order appealed from is not a final order or judgment." Order of Navajo Court of Appeals, No. A-CV-06-84 (1984).

Ambassador Insurance Company, a Vermont Corporation, had been the insurance carrier for the Navajo Nation at the time the plaintiffs' cause of action accrued and at the time the plaintiffs' suit was filed. On November 10, 1983, the Vermont Commissioner of Banking and Insurance was appointed receiver of Ambassador. On March 30, 1984, the receiver filed in the Vermont state court an "Application for An Order Of Liquidation Of Ambassador Insurance Company." Ambassador Insurance Company was determined to be insolvent, as of March 31, 1984, without reasonable prospects for rehabilitation. *In Re: Ambassador Insurance Company, Inc.,* No. S444-83 Wn. C. (Washington Superior Court, State of Vermont).

On January 2, 1985, the defendants again filed a motion to dismiss, based upon sovereign immunity grounds, by alleging that the district court had no jurisdiction under any of the theories alleged by plaintiffs in their complaint. The defendants argued that the plaintiffs had not cited any federal law or regulation, or tribal law or regulation, which explicitly allowed an exception to the Navajo Sovereign Immunity Act. The defendants further argued in their motion that the Navajo Nation's insurance carrier, Ambassador Insurance Company, Inc., had become insolvent and was in liquidation, thereby foreclosing district court jurisdiction under the insurance exception to sovereign immunity.

The defendants' motion to dismiss was granted on July 1, 1985. The district court found that it had no jurisdiction over the Navajo Nation without

1. The plaintiffs also alleged district court jurisdiction under the "1850" and "1868" Treaties between the United States and the Navajo Nation. We will not address whether these theories grant jurisdiction to the district court over the Navajo Nation, because the appeal can be decided on the issues identified above.

The plaintiffs also alleged that "42 US Code 1983 [and] 28 US Code 1301" also are federal statutes "which give explicit authorization to sue the Navajo Tribe." Brief of Plaintiffs at 3, 4. We disagree with the plaintiffs on these arguments.

its expressed consent, and that the Navajo Nation may be sued in Navajo courts only pursuant to the expressed exceptions under the Navajo Sovereign Immunity Act. The court also found that the plaintiffs had not cited any federal law or regulation, or tribal law or regulation, which explicitly allowed suit against the Navajo Nation. The court further found that the Navajo Nation's insurance carrier was insolvent, thereby the plaintiffs had no insurance claim.

On July 29, 1985, the plaintiffs filed this appeal by essentially raising the issues identified above. The appeal was granted and the case was scheduled for oral arguments to be heard on October 10, 1986. The plaintiffs' counsel, however, requested a continuance due to scheduling conflicts with a jury trial, so oral arguments were rescheduled to October 17, 1986. On October 7, 1986, the defendants filed a motion to continue the case "indefinitely" until after the Navajo Tribal Council had taken the opportunity to act upon proposed amendments to the Navajo Sovereign Immunity Act. The defendants argued that the proposed amendments would materially affect the issues on appeal to the Court. The plaintiffs joined in the motion to continue. We granted the defendants' motion to continue indefinitely on October 13, 1986. The parties were ordered to submit their notices of readiness for oral arguments when they were ready.

On December 11, 1986, the proposed amendments to the Navajo Sovereign Immunity Act were passed by the Navajo Tribal Council. See *Navajo Tribal Council Resolution*, CD-60-86. The amendments essentially allowed suit against the Navajo Nation for wrongful deprivation or impairment of civil rights guaranteed under the Navajo Bill of Rights, 1 N.T.C. Sec. 1 *et seq.* (1986 Amendment).

On February 19, 1987, the plaintiffs filed a motion for setting a hearing on appeal. On April 28, 1987, the defendants concurred in the motion for setting the hearing on appeal. On May 5, 1987, we requested supplemental memorandums from the parties. Oral arguments were heard on June 12, 1987.

# I.

The right of the Navajo Nation to assert a defense of sovereign immunity whenever it is sued is beyond question. The Navajo Nation retains all those attributes of sovereignty, which have not been taken away by Congress, or ceded by Treaties between the Navajo Nation and the United States. The power to raise a defense of sovereign immunity, and to waive the doctrine of sovereign immunity, is still within the inherent sovereign powers of the Navajo Nation. The Navajo Tribal Council exercised this power in 1966, when in the course of enacting laws pertaining to housing

projects, it expressed the Navajo Nation's right "to assert the defense of sovereign immunity in any lawsuit against the Navajo Tribe." 6 N.T.C. Sec. 616(b)(1) (1978).

The doctrine of sovereign immunity received little attention in Navajo courts prior to the 1980 Navajo Sovereign Immunity Act. It was mentioned in *Tapaha v. The Navajo Housing Authority*, 1 Nav. R. 5 (1969), but nothing else. The Court first recognized that the Navajo Nation possessed sovereign immunity in *Dennison v. Tucson Gas and Electric Co.*, 1 Nav. R. 95 (1974). That case also implied that tribal officials who acted outside the law were not protected by the doctrine. This implication took root in *Halona v. MacDonald*, 1 Nav. R. 189, 202 (1978), where the Court stated that the "doctrine [of sovereign immunity] does not protect wrongdoing." *Accord Davis v. The Navajo Tribe*, 1 Nav. R. 370, 381 (Crownpoint D. Ct. 1978). Otherwise the Court acknowledged that the Navajo Nation and its governing body enjoyed the protections of sovereign immunity. *Halona*, 1 Nav. R. at 202.

The most vigorous discussion of the doctrine of sovereign immunity occurred in *Keeswood v. The Navajo Tribe*, 2 Nav. R. 46 (1979). That decision established a number of important principles which we must consider in each case raising the issue of sovereign immunity in Navajo courts. First, the Court recognized that the doctrine of sovereign immunity is judicially created and the courts have power to waive the doctrine. However, the Court declined to waive the doctrine, but instead urged the Navajo Tribal Council to act on the subject. Second, the Court recognized that tribal officials are immune from suit only when they are acting within the scope of their official capacities. Finally, the Court held that "the Navajo Tribe cannot be sued without its consent." *Keeswood*, 2 Nav. R. at 55.

Sovereign immunity is jurisdictional, therefore the Navajo Nation's defense of sovereign immunity automatically raises questions concerning the district court's jurisdiction over the Navajo Nation. The general rule in federal and state courts is that an Indian Tribe is immune from suit, unless Congress has explicitly authorized suit against the Indian Tribe. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978); *See also United States v. United States Fidelity & Guaranty Company*, 309 U.S. 504 (1940). It is also now known that an Indian Tribe, in the exercise of its inherent sovereignty, can consent to be sued. *United States v. Oregon*, 657 F.2d 1009 (9th Cir. 1981); *See also Puyallup Tribe v. Department of Game of the State of Washington*, 433 U.S. 165 (1977); *Morgan v. Colorado River Indian Tribe*, 103 Ariz. 425, 443 P.2d 421 (1968).

Within the Navajo Nation, the courts are created by the Navajo Tribal Council. 7 N.T.C. Sec. 253 (1959). Jurisdiction of the Navajo courts is also established by the Navajo Tribal Council. 7 N.T.C. Sec. 253 (1959) (district court jurisdiction); 7 N.T.C. Sec. 302 (1985) (Supreme Court jurisdiction). But neither of these jurisdictional statutes deal with suits against the Navajo Nation.

It was not until 1980, perhaps at the "urging" of the Court in *Keeswood*, 2 Nav. R. at 55, that the Navajo Tribal Council passed the Navajo Sovereign Immunity Act. In that Act, the Navajo Tribal Council has made it plain that: "Jurisdiction of the Trial Court of the Navajo Tribe shall not extend to any action against the Navajo Nation without its expressed consent." 7 N.T.C. Sec. 257 (1980). The Navajo Tribal Council then created certain exceptions through which it expressed the Navajo Nation's consent to suit. 7 N.T.C Sec. 854 (1980). These Navajo statutes are consistent with the rule established by federal case law that a sovereign's expressed consent will give jurisdiction to a court over the sovereign. *United States v. King,* 395 U.S. 1 (1969); *United States v. Testan,* 424 U.S. 392 (1976). In addition, the statutes are also in harmony with the rule that an Indian Tribe may consent to suit. *United States v. Oregon,* 657 F.2d 1009 (9th Cir. 1981).

Initially, we studied the Navajo Nation's general jurisdiction statute, 7 N.T.C. Sec. 253, to see if that statute gave the Navajo district courts jurisdiction over the Navajo Nation. We conclude that the Navajo Nation has not expressed its consent to be sued under 7 N.T.C. Sec. 253. Otherwise, that statute empowered the district courts with civil jurisdiction over suits in which the express consent of the Navajo Nation to suit is not required. Indeed, Section 253 would give the district courts jurisdiction over ultra vires actions of tribal officials without running afoul of the sovereign immunity doctrine.

### A.

With this background established we now turn to the first issue on appeal. That issue concerns the insurance exception in the Navajo Sovereign Immunity Act, which reads as follows: "The Navajo Nation may be sued in the Courts of the Navajo Nation with respect to any claim for which the Navajo Nation carries liability insurance." 7 N.T.C. Sec. 854(c) (1980). By this law the Navajo Nation has expressly waived its immunity. A Navajo court would have jurisdiction over the Navajo Nation in a case that falls within this exception. *See Keeswood v. The Navajo Tribe,* 2 Nav. R. 46 (1979); *United States v. Oregon,* 657 F.2d 1009 (9th Cir. 1981).

The Navajo Sovereign Immunity Act was passed to insure that people having legal claims against the Navajo Nation would have a means of presenting those claims in Navajo courts. Otherwise, legislative inaction might have compelled creating judicial waivers to the Navajo Nation's sovereign immunity. *See Keeswood v. The Navajo Nation,* 2 Nav. R. 46 (1979).

Essentially, the insurance exception to sovereign immunity has been enacted for the benefit of injured parties, and thus, it must be interpreted to the benefit of the injured plaintiff. This is supported by the record of the

Navajo Tribal Council debate preceding passage of the Navajo Sovereign Immunity Act. The record is clear that a person injured by the Navajo Nation has "the right to sue the Navajo Nation" under the insurance exception. *Record of the Navajo Tribal Council Minutes,* page 348, April 30, 1980.

The intent behind the insurance exception led us to conclude that sovereign immunity is waived, and the court has jurisdiction under Section 854(c), if there is evidence that the Navajo Nation was insured for plaintiff's claim when suit was filed. It is immediately after suit is filed that the court is best able to determine whether it has jurisdiction over the Navajo Nation. Mere evidence of insurance does not give the district court jurisdiction. The law requires that the plaintiff's claim be covered under the insurance policy before the court can assert jurisdiction over the Navajo Nation. See 7 N.T.C. Sec. 854(c) (1980). This is consistent with the principle that the sovereign can impose conditions upon the manner in which it can be sued. *Beers v. Arkansas,* 20 How. 527, 15 L.Ed 991 (1857); *See also The Navajo Housing Authority v. Howard Dana and Associates,* 5 Nav. R. 157 (1987); *Lee v. Johns,* 3 Nav. R. 229 (Shiprock D. Ct. 1982).

Once the court has obtained jurisdiction under the insurance exception, that jurisdiction cannot be defeated by a later insolvency of the insurance company. At least that is how we construe Section 854(c) of the 1980 Navajo Sovereign Immunity Act. Jurisdiction over the Navajo Nation is based upon a finding that the Navajo Nation was insured at the time of suit and that the insurance covered the claims presented by the plaintiff.

Jurisdiction of the court is not dependent upon the question of whether the insurance company is able to pay. This is how 7 N.T.C. Sec. 854(c) (1980), must be construed, otherwise the rights of injured claimants to have their cases heard in Navajo courts will be denied solely upon the financial irresponsibility of the Navajo Nation's insurance carrier. In addition, any other construction will defeat the very purpose for creating an insurance exception to the Navajo Nation's defense of sovereign immunity.

The expressed intent of the Navajo Tribal Council is to redress injuries caused by the Navajo Nation. We refuse to believe that this intent can be voided by the actions of third parties unconnected to the Navajo Nation, and who have no responsibility in formulating government policy for the Navajo people.

It is the responsibility of the Navajo Nation, and not the plaintiffs, to screen and hire reputable insurance companies. The Navajo Nation must not be allowed to divest the district court of jurisdiction simply because it has made a poor selection of an insurance company.

In this case, both parties agree that the Navajo Nation was insured at the time of the incidents giving rise to the suit and at the time suit was filed. We are not sure whether the plaintiffs' claims were covered by the policy then in

effect. That is a matter for the district court to decide. We hold that in this case, under 7 N.T.C. Sec. 854(c) (1980), the district court has jurisdiction over the Navajo Nation if the Navajo Nation was insured at the time suit was filed and if the insurance policy covered the claims presented by the plaintiffs.

B.

The second issue is whether the Indian Civil Rights Act (ICRA), 25 U.S.C. Sec. 1301 *et seq.* (1968), explicitly authorizes suit against the Navajo Nation in Navajo courts, under the explicit federal law exception to the Navajo Sovereign Immunity Act, 7 N.T.C. Sec. 854(a) (1980). Like the insurance exception, this issue also concerns the district court's jurisdiction over the defendant Navajo Nation.

The plaintiffs argue that the ICRA is federal law which authorizes suit against the Navajo Nation in Navajo courts pursuant to 7 N.T.C. Sec. 854(a) (1980). Furthermore, according to plaintiffs, the United States Supreme Court, in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978), has made it plain that Indian Tribes can be sued in tribal courts for violations of the ICRA. Plaintiffs want us to hold that the ICRA has waived the sovereign immunity of the Navajo Nation in Navajo courts. For the reasons set forth below, we will not so hold.

It has been said that Congress has plenary authority over Indian Tribes. *United States v. Kagama*, 118 U.S. 375 (1886); *Lonewolf v. Hitchcock*, 187 U.S. 553 (1903). But our stance is that Congress has special authority relating to Indian Affairs, in fulfillment of its unique trust obligations to protect and preserve the inherent attributes of Indian tribal self-government, consistent with the sovereign status of Indian tribes as recognized by the treaties, policies, decisions, Constitution and other laws of the United States.[2] Under this special authority, Congress has the power to consent to the waiver of sovereign immunity by an Indian Tribe and in specific instances may waive a tribe's sovereign immunity.

A congressional waiver of an Indian Tribe's sovereign immunity must be unequivocally expressed and not implied. *Santa Clara Pueblo v. Martinez*, 436 U.S. at 58, 59. Has Congress in the ICRA unequivocally expressed that the Navajo Nation's sovereign immunity be waived for suits alleging violations of the ICRA? This question has been decided by the United States Supreme Court: "[T]he provisions of [25 U.S.C] Section 1303 can hardly be read as a general waiver of the tribe's sovereign immunity. In the absence here of any unequivocal expression of contrary legislative intent, we conclude that suits against the tribe under the ICRA are barred by its sovereign immunity

2. See AMERICAN INDIAN RESOURCES INSTITUTE, INDIAN TRIBES AS SOVEREIGN GOVERNMENTS (1987).

from suit." *Santa Clara Pueblo v. Martinez*, 436 U.S. at 59. We agree with the United States Supreme Court that the ICRA does not expressly waive the sovereign immunity of Indian Tribes, including the Navajo Nation in any court.

The plaintiffs concede that the IRCA lacks express provisions waiving an Indian Tribe's immunity from suit. Nonetheless, the plaintiffs argue that *Santa Clara Pueblo v. Martinez*, 438 U.S. 49 (1978), requires that the Navajo Nation waive its immunity in Navajo courts for suits brought against it under the ICRA. Implicit in plaintiffs' position is that the Navajo Nation should be held responsible for monetary damages if found guilty of ICRA violations.

Plaintiffs read *Santa Clara Pueblo v. Martinez, Id.,* too broadly. Nowhere in the decision did the Supreme Court say that Congress, in the ICRA, has waived the sovereign immunity of Indian Tribes in tribal courts. To the contrary, following application of the rules for congressional waiver of tribal sovereign immunity, the Supreme Court concluded that suits against Indian Tribes under the ICRA were barred by its sovereign immunity from suit. *Santa Clara Pueblo v. Martinez*, 436 U.S. at 59. Likewise, if the ICRA does not waive tribal sovereign immunity in federal courts, then under the same analysis, it does not waive the sovereign immunity of the Navajo Nation in Navajo courts, unless the Navajo Nation has expressed its consent to be sued under the ICRA.

Absent express congressional waiver of tribal sovereign immunity, the decision to waive the immunity of the Navajo Nation for civil rights actions rests entirely with the Navajo Nation.[3] A decision to waive sovereign immunity is an exercise of sovereignty by the Navajo Nation for the benefit of its citizens and for the good of the Navajo government. After carefully studying the ICRA, we conclude that the ICRA does not explicitly authorize suit against the Navajo Nation in Navajo courts, under Section 854(a) of the 1980 Navajo Sovereign Immunity Act.

The Navajo people are entitled to a representative and accountable Navajo Tribal Government. For this reason, important decisions having direct consequences on the Navajo tribal treasury should be made by the elected representatives of the Navajo people. If we hold that the ICRA has waived the sovereign immunity of the Navajo Nation in Navajo courts, we will be sanctioning an attack on the tribal treasury. Such decisions are best made by elected Navajo representatives after consultation with their constituents.

In addition, the funds of the Navajo Nation are not unlimited. Each year the funds maintained by the Navajo Nation for the operation of the Navajo Tribal Government is exceeded by the people's demand for more govern-

---

3. On December 11, 1986, the Navajo Tribal Council amended the Navajo Sovereign Immunity Act to allow for suits against the Navajo Nation for wrongful deprivation or impairment of civil rights. *Navajo Tribal Council Resolution*, CD-60-86.

mental services. IRCA suits, which result in money damages against the Navajo Nation, will only divert funds allocated for essential governmental services.[4]

*Santa Clara Pueblo v. Martinez, Id.,* does instruct us that Indian Tribes should provide forums "to vindicate rights created by the ICRA." 436 U.S. at 65. Indian Tribes may have to amend their laws, or enact laws, which will conform to the rights created by the ICRA, because the ICRA "has the substantial and intended effect of changing the law which [tribes] are obliged to apply." 436 U.S. at 65. The Navajo courts have always been available for the enforcement of civil rights created by the ICRA and the Navajo Bill of Rights, 1 N.T.C. Sec. 1 *et seq.* (1986 amendment).[5] Enforcement has generally been through suits against tribal officials for violations of tribal laws.[6] The laws protecting the civil rights of citizens in Navajo Country have been in effect even prior to enactment of the 1968 ICRA. Navajo Bill of Rights, 1 N.T.C. Sec. 1 *et seq.* (enacted October 1, 1967). Finally, the Navajo Bill of Rights contains substantially the same rights as those found in the ICRA.

The Order of the district court on the issue of the insurance exception is reversed. The Order of the district court on the issue of the Indian Civil Rights Act is affirmed. The case is remanded to the district court for proceedings consistent with this Opinion.

4. The recent amendment to the Navajo Sovereign Immunity Act allows certain suits against the Navajo Nation for civil rights violations, and money damages, if awarded, are covered by the Navajo Nation's insurance. *Navajo Tribal Council Resolution*, CD-60-86, December 11, 1986.

5.The following is a partial list of cases in which civil rights have been enforced by the Navajo courts: *Halona v. MacDonald*, 1 Nav. R. 189 (1978); *Yazzie v. Board of Election Supervisors*, 1 Nav. R. 213 (1978); *Navajo Nation v. Browneyes*, 1 Nav. R. 213 (1978); *Deswood v. Navajo Board of Election Supervisors*, 1 Nav. R. 306 (1978); *Gudac v. Marianito*, 1 Nav. R. 385 (1978); *George v. The Navajo Tribe*, 1 Nav. R. 1 (1979); *Navajo Nation v. Bedonie*, 2 Nav. R. 131 (1979); *Nez v. Bradley*, 3 Nav. R. 126 (1982); *Help v. Silvers*, 4 Nav. R. 9 (1983); *Navajo Housing Authority v. Betsoi*, 5 Nav. R. 5 (1984); *McCabe v. Walters*, 5 Nav. R. 43 (1985); *Mustache v. The Navajo Board of Election.Supervisors*, 5 Nav. 5. 115 (1987); *Chavez v. Tome*, 5 Nav. R. 183 (1987).

6. The ICRA and the Navajo Bill of Rights may also be enforced against Navajo Nation officials under the Navajo Sovereign Immunity Act. *See* 7 N.T.C. Sec. 854(d) (1980).